Hoffman and Flack, Adm'rs *vs.* Gosnell, Trustee, *et al.*

WILLIAM E. HOFFMAN and DAVID HUDSON FLACK, Administrators of THOMAS J. FLACK *vs.* FRANK GOSNELL, Trustee, and others.

*Absolute deed—Unrecorded declaration of Trust—Rights of Grantee's creditors.*

H. and D. being largely indebted to their father's estate in their individual capacity and as partners in trade, and to their brother
· J. individually, administrator of said estate, executed to J. a

37                          v. 75.

· deed of certain property, absolute on its face, for the alleged consideration of $175,000, which deed was duly recorded, and there was nothing disclosed by the record to qualify the absolute ownership in fee of the property by J. Simultaneously with the execution of the deed, the parties executed a declaration of trust, which was never recorded, setting forth that J. should sell the property, when, in the exercise of his judgment and discretion, he should see fit to do so, for the purpose of first paying the indebtedness of H. and D. to their father's estate. Subsequently J. was removed as administrator, and complainants were appointed in his stead. J. made an assignment, including this property, for the benefit of his creditors. The substituted administrators filed a bill asking to be given control of the estate as receivers in the place of the trustee of J. claiming that the same should be regarded as assets of the estate of their decedent. HELD :

1st. That as the declaration of trust was never recorded, as required by the registration laws, it could have no effect as against the creditors of J. who became such after the execution of the deed to him and the declaration of trust, and all that equity could do for the complainants would be to allow them to share *pari passu* with the other creditors in the distribution of the proceeds of the property.

2nd. That the simple fact that one of the grantors in the absolute deed continued to occupy a part of the property, did not detract from the effect of such recorded deed, nor deprive the creditors of J. of the protection which such deed gave them in dealing with and trusting him.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This appeal was taken from a *pro forma* decree dismissing the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, and McSHERRY, J., and BRYAN, and BRISCOE, J., participated in the decision.

*William E. Hoffman,* and *S. Teackle Wallis,* for the appellants.

Hoffman and Flack, Adm'rs *vs.* Gosnell, Trustee, *et al.*

The complainants' allegations in their bill as to the trust in the said property under said agreement are fully established.

As to this there is no question made so far as the same relates to the defendant Flack. It has been clearly shown that the deed of conveyance, and the agreement setting forth the reasons, purposes and intentions, for which the said deed was executed, were executed simultaneously, and were intended to be operative together as one and the same act.

The agreement is clear, unmistakable and free from all ambiguity. It speaks for itself. The objections have been solely as to the effect of the trust upon the rights of the defendant Gosnell, as assignee under the deed of trust, and the other defendants who claim to be creditors of the said defendant Flack. No evidence has been offered by any of the defendants to contradict the complainants' evidence establishing the trust in the property.

The trust in the said property having been clearly shown and established, the defendant Flack is bound thereby; and he being bound, his assignee, Gosnell, under the deed of trust for the benefit of creditors, is equally bound, and cannot assert or maintain any other or greater claim or right than that really held by the defendant Flack. *Tiernan vs. Poor,* 1 *G. & J.,* 216, (*Brantly Ed.*) *and note a; Ketchum vs. St. Louis,* 101 *U. S.,* 316.

The defendant Gosnell, trustee under the deed for the benefit of creditors, is not a purchaser for value, but merely a volunteer. *Ratcliffe vs. Sangston, et al.,* 18 *Md.,* 383, decides that "assignees are not purchasers for a valuable consideration, but stand in the position of the assignor and take the property *subject to all the equities which were binding before the assignment.*"

*Busey vs. Reese,* 38 *Md.,* 268, declares that *Ratcliffe vs. Sangston, et al.,* "was decided in conformity with the well-

established doctrine of Courts of Chancery." *"Is in accordance with the current authorities."* See *Dowler vs. Cushwa, &c.,* 27 *Md.,* 367; *Luckemeyer & Schefer vs. Seltz & Mertz, &c.,* 61 *Md.,* 324; *Burrill on Assignments, sec.* 391; *Bump's Bankruptcy,* 547, 548.

The defendant, James W. Flack, and his trustee, Gosnell, both being bound by the trust in the said property, the creditors of the said Flack are likewise bound, and no claim, interest or benefit in the said property can be asserted or maintained on their behalf, either by the said trustee, who represents them, or otherwise, other than what the said Flack himself, in his own name, and in his own right, and for his own individual benefit, could have asserted and maintained.

Courts of equity will enforce and uphold trusts of the character herein established, against assignees in insolvency, creditors, and in fact all persons other than *bona fide* purchasers for value without notice.

"Judgment creditor is not purchaser for value in technical or limited sense in which the term is used in equity, nor that in which it is used in the recording Acts of this country, and must stand or fall by the real and not by the apparent rights of the defendant in the judgment." *Knell vs. Green Street Building Asso.,* 34 *Md.,* 72.

"It is well settled that a judgment creates only a general lien, and that a judgment creditor acquires no higher and better right to the property or assets of the debtor than the debtor himself had when the judgment was rendered." *Pierce vs. Brown,* 7 *Wallace,* 218.

This is the universal and established principle laid down by an unbroken line of English and American cases. See *McMechen and Sullivan vs. Maggs,* 4 *H. & J.,* 132; *Hampson vs. Edelen,* 2 *H. & J.,* 64; *Baynard vs. Norris,* 5 *Gill,* 468; *Oehler vs. Walker,* 2 *H. & G.,* 323; *Repp, et al. vs. Repp, et al.,* 12 *G. & J.,* 341; *Carson & Vickery, Adm'rs vs. Phelps, Trustee, et al.,* 40 *Md.,* 73;

*Hartsock vs. Russell*, 52 *Md.*, 619, 624, 625; *Swift vs. Williams and Moore, Trustees*, 68 *Md.*, 249; *Englar vs. Offutt*, 70 *Md.*, 78, 85; *Alexander vs. Ghiselin*, 5 *Gill*, 138, 181; *Aldridge and Higdon vs. Weems and Hall*, 2 *G. & J.*, 37; *Cecil Bank vs. Snively, Adm'r*, 23 *Md.*, 538.

In *Dyson vs. Simmons*, 48 *Md.*, 207, this Court has thoroughly reviewed the prior Maryland cases, and all the authorities, and declared the question established and settled.

The complainants have shown that the defendant Flack never had possession of the property in question in this case, and was on the premises but once from the time the said deed was executed to him, and on that occasion by special permission, and on the order of the grantor, David Hudson Flack, from whom the said Gosnell, trustee, sought to obtain possession after the execution of the deed of trust. The said grantor's possession and control of the property having uninterruptedly continued, and whose name was the only one on the sign upon the premises.

There was therefore sufficient notice to put the defendants upon enquiry, and such enquiry was not made. But one only of the defendants pretend to have made any enquiries to the defendant Flack—all other enquiries alleged to have been made by the defendants were made of third parties having no interest or rights in the property.

Enquiry even of the defendant Flack was not sufficient. Had the defendant creditors made enquiry upon the premises, or of the grantor, David H. Flack, whose sign was thereon, they could have ascertained that the defendant, Flack, was not the owner of the property. And while the defendants now lay stress upon the fact that the said deed was of record, they have not offered any evidence showing that they had actual knowledge of such deed; and although it is true that said deed was

of record, it was equally true that the public records gave notice that said James W. Flack was the administrator of his father's estate, and that said grantors in said deed were debtors to said estate in large sums, and of which facts the defendants were bound to take notice.

The defendants must therefore suffer the consequences of their own negligence and abide the result of failure to make proper, diligent and sufficient enquiry. *Hardy and Talburtt vs. Summers and Wife,* 10 *G. & J.,* 316; *Rogers vs. Scarff, et al.,* 3 *Gill,* 127; *Ringgold vs. Bryan,* 3 *Md. Ch. Dec.,* 488; *Cordova vs. Hood,* 17 *Wall.,* 1; 2 *Pomeroy's Eq., sec.* 617, *note* 3.

*Frank Gosnell,* (with whom was *Thomas M. Lanahan,* on the brief,) for the the appellee, the trustee.

*Randolph Barton, Fielder C. Slingluff,* and *Robert D. Morrison,* (with whom was *Skipwith Wilmer,* on the brief,) for the other appellees.

IRVING, J., delivered the opinion of the Court.

In 1874 Thomas J. Flack, of Baltimore City, died, intestate, leaving four children and some grand-children —the children of a deceased son—his heirs-at-law, and distributees together with his widow.    Letters of administration were granted to his son, James W. Flack, who undertook the settlement of the estate.    Henry H. Flack and David Hudson Flack, sons of the deceased Thomas J. Flack, were largely indebted to their father's estate in their individual capacity and as partners in trade. They were also largely indebted to their brother, James W. Flack, individually, who administered on their father's estate.

On the tenth day of July, 1877, David Hudson Flack and Henry H. Flack and wife, conveyed to James W. Flack, in fee, a lot of ground and improvements situ-

ated in Canton, Baltimore County, known as the distillery property, and on the same day the deed was recorded among the land records of Baltimore County. This deed is absolute on its face and professes to be "in consideration of the sum of one hundred and sixty-five thousand dollars lawful money paid to them (the grantors) by James W. Flack, the receipt whereof is hereby acknowledged." The record thus made disclosed nothing to qualify the absolute ownership in fee of this property by James W. Flack.

On the 11th of October, 1890, James W. Flack executed and delivered to the appellee, Frank Gosnell, a deed of all his property in trust for the benefit of his creditors without preference or priority, which deed was duly recorded in Baltimore City and also in Baltimore County. Under this deed the grantee, Frank Gosnell, applied to the Circuit Court of Baltimore City to assume jurisdiction of the trust created by the deed, and on the 18th of October, 1890, that Court passed an order directing the execution of the trust under the direction of that Court. The bill of complaint in this cause assails that deed, *quoad* the distillery property, and alleges, that when the deed from David Hudson Flack, and Henry H. Flack for the distillery property was executed to James W. Flack, he was the administrator of his father's estate; but that after the execution of the deed by him to Frank Gosnell, his letters of administration were revoked, and the complainants were appointed administrators of Thomas J. Flack's estate. It avers that on the 10th of July, 1877, when the deed to James W. Flack was executed the grantors David Hudson Flack and Henry H. Flack as copartners trading as Thomas J. Flack & Sons were indebted to James W. Flack in the sum of thirty-one thousand seven hundred and sixty-one dollars and eight cents ($31,761.08), and as Flack Brothers, in the sum of seventeen thousand four hundred and fifty-one

dollars and seventy-nine cents ($17,451.79), making a total of $49,212.87, due to James W. Flack. And that they were indebted to the estate of their father, of which James W. Flack was administrator, as partners trading as Thomas J. Flack & Sons, in the sum of ninety-two thousand and ninety dollars and ninety-two cents ($92,090.92); and as copartners trading as Flack Brothers in the sum of fifty-seven thousand two hundred and fifty-four dollars and eighty-six cents ($57,254.86); and that Henry H. Flack was individually indebted to his father in the sum of twenty-three thousand dollars ($23,000), and David H. Flack was indebted to his father in the sum of seventeen thousand dollars ($17,000), making a total of one hundred and eighty-nine thousand three hundred and forty-five dollars and sixty-five cents ($189,345.65). By payments in various ways including the application of the distributive shares of Henry and David in their father's estate in accounts already passed by the administrator, the indebtedness to their father's estate has been reduced to one hundred and thirty-two thousand three hundred and thirty-seven dollars and eighty-six cents ($132,337.86); and the indebtedness to James W. Flack individually has been reduced to thirty-three thousand eight hundred and thirty-seven dollars and fifty-three cents ($33,837.53). The contention of the bill is that this Canton distillery property was conveyed to James W. Flack for the purpose of sale to pay this indebtedness to the estate of Thomas J. Flack, and that it is and ought to be regarded as assets of that estate, and the appellants, as administrators of the estate appointed in the place of James W. Flack removed, ask to be given control of the same as receivers in the place of Frank Gosnell, grantee of James W. Flack. In support of their contention they file with this bill the following paper, executed simultaneously with the deed to James W. Flack, but never recorded. It is designated

as exhibit "H. & F. No. 4." "This agreement, made in duplicate this tenth day of July one thousand eight hundred and seventy-seven, between James W. Flack and Mary E. Flack his wife, of the first part, and Henry H. Flack and David Hudson Flack of the second part: Witnesseth, that whereas the said Henry H. Flack and David Hudson Flack, being indebted as hereinafter expressed to the estate of Thomas J. Flack, late of the City of Baltimore, deceased, (of which estate James W. Flack is the administrator) in the sum of one hundred and eighty-nine thousand three hundred and forty-five dollars and seventy-eight cents, and to the said James W. Flack in the sum of forty-nine thousand two hundred and twelve dollars and eighty-seven cents, have, in partial extinguishment thereof, (so far as the same may avail) conveyed to the said James W. Flack, in fee simple, by deed of even date herewith, absolute on its face, and intended to be so in form and effect, without derogation thereof by reason of anything herein contained, certain land in Baltimore County, in the State of Maryland, being the same land which is described in a deed from the Canton Company of Baltimore to the said Henry W. Flack and David Hudson Flack recorded among the land records of said county in liber E. H. A. No. 73, folio 543 —the said indebtedness of the said Henry H. Flack and David Hudson Flack, to the said estate, have arisen as follows, namely, by them as copartners, trading as Flack Bros., to the amount of fifty-seven thousand two hundred and fifty-four dollars and eighty-six cents; by them as copartners trading as T. J. Flack & Sons, to the amount of ninety-two thousand and ninety dollars and ninety-two cents; by Henry H. Flack to the amount of twenty-three thousand dollars, and by David Hudson Flack to the amount of seventeen thousand dollars; and their said indebtedness to the said James W. Flack having arisen as follows, namely, by them as copartners

trading as Flack Brothers, to the amount of seventeen thousand four hundred and fifty-one dollars and seventy nine cents, and by them as copartners trading as T. J. Flack & Sons, to the amount of thirty-one thousand seven hundred and sixty-one dollars and eight cents.

"And whereas the said Henry H. Flack and David Hudson Flack, two of the distributees of the estate of their father, the said Thomas J. Flack, deceased, will be entitled in the settlement of said estate to a large sum of money, the precise amount of which has not yet been ascertained.

"And whereas it was agreed by and between the said James W. Flack and the parties hereto of the second part, at the time of the execution of said deed, that the entire amount of the distributive shares of the said parties hereto of the second part in the aforesaid estate, should be applied as soon as ascertained towards the payment of their aforesaid indebtedness to said estate, and that the net income of the property so as aforesaid conveyed to the said James W. Flack, from the date of said conveyance to the time of the sale hereinafter provided for, (after the payment of all necessary charges on said property,) and the net proceeds of sale of said property, after the payment of the expenses of such sale and all necessary charges on said property which its income may not have been sufficient to meet, should be applied *pro rata* toward the payment of the residue of said indebtedness to said estate, and the aforesaid indebtedness to the said James W. Flack, whenever the said James W. Flack in the exercise of his judgment and discretion should see fit to sell the said property.

" Now, therefore, the said James W. Flack avers that when he shall hereafter see fit to sell the said property conveyed him as above mentioned, he will apply the aforesaid net proceeds of said sale to the payment aforesaid. And it is declared to be the agreement of the

Hoffman and Flack, Adm'rs *vs.* Gosnell, Trustee. *et al.*

parties hereto that the entire amount of the distribution of the said Henry H. Flack and David Hudson Flack in the said estate shall be first applied towards the payment of their aforesaid indebtedness to said estate; and that when sale shall be made as aforesaid of the said property, the aforesaid net proceeds of such sale, together with the aforesaid net income of said property, shall be applied when and as received in the manner and to the purposes hereinbefore expressed for the application thereof.

"And the parties hereto of the first part, in consideration and furtherance of the premises, covenant with the parties of the second part, that the said Mary E. Flack will join in the execution of deeds of conveyance of said property, releasing her right of *dower* therein whenever said property shall be conveyed by the said James W. Flack; and that in the event of the death of the said James W. Flack before such conveyance shall be made, she will execute and deliver such deed or deeds to the purchaser thereof as may be lawfully required for the fulfillment of this agreement, and further that she will not at any time assert any claim of dower whatsoever in said property or any claim to the proceeds thereof, it being understood that she hereby relinquishes all her rights, present and prospective, in the premises as the wife of the said James W. Flack. Witness our hands and seals, on the day and year first herein written.

JAMES W. FLACK,            *******
                           ⁂ SEAL.⁂
                           *******

MARY E. FLACK,             ********
                           ⁂ SEAL. ⁂
                           ********

HARRY H. FLACK,            *******
                           ⁂ SEAL. ⁂
                           *******

DAVID HUDSON FLACK.        *******
                           ⁂ SEAL. ⁂
                           *******

This instrument was duly acknowledged before a justice of the peace of Baltimore City, but the same was *never* recorded. It recites that it was executed in *duplicate,* but was really executed in triplicate, in order, manifestly, that James, Henry and David might each have an original; and from that fact an inferential argument is drawn by the appellees, that the same was intended to be preserved as a secret agreement between the parties, and was never designed to be recorded. Hence also it is contended, by the appellees, that this paper is not admissible in evidence, and can not be allowed to have the effect of qualifying in any degree the deed to James W. Flack, which was duly recorded, against the creditors of the said James W. Flack, who were wholly ignorant of the existence of any such paper, and were justified in supposing the property to be the absolute and unqualified property of James W. Flack, as the records said it was. The bill does not charge that it was agreed by the parties that this paper was designed to be recorded. It simply asserts that James W. Flack failed to have it recorded. In his answer to the bill he asserts it was never intended for it to be recorded; and the complainant, D. H. Flack, in his testimony on the subject, says not one word was said at the time of the execution of the paper about its record, and, as far as he knew, it was not necessary to record the paper; and that, as far as the recording was concerned, he knew nothing about it. Whatever may have been the design of the parties, the paper was not recorded, and in view of all the facts connected with it, we may assume it was not intended to record it. That would seem to be the natural and reasonable inference from the form and manner in which it was executed. The main question in the case therefore is, can that paper in any way control or restrict the effect of the deed to James W. Flack? The bill calls the paper a defeasance, and relies on it as such. This it

certainly is not.   A defeasance is an instrument exe-
cuted at the same time with some other deed, and in-
tended to defeat the force of the latter upon the perform-
ance of certain conditions expressed therein.   The in-
strument relied on as a defeasance does not pretend to
avoid the deed upon the happening of any condition what-
ever.   On the contrary, that instrument says that the
deed is not only absolute on its face, but was intended
to be so, both in form and effect, without derogation
thereof by anything contained in that paper.   It ex-
pressly disavows any purpose to make that paper in any
event void or of none effect.   If the paper is to have any
effect at all, it can only do so by reason of its being, in
effect, a declaration of trust.   This it may be called; for
it does declare for what purpose the deed was made, and
what application was to be made of the proceeds of sale
of the property, when made by James W. Flack, the
grantee of the deed.   The appellees insist that this
paper, not having been recorded, can not be taken to
contradict the express declaration of the deed that it was
made for the consideration of ($165,000) one hundred
and sixty-five thousand dollars.   By section 1, Article
21, of the Code, it is provided : "No estate of inherit-
ance or freehold or any declaration or limitation of use
shall pass or take effect unless the deed conveying the
same shall be executed,  acknowledged and recorded as
herein provided."   This paper is under seal, and is ac-
knowledged before a justice of the peace, and is a deed.   It
does declare a certain use for certain people mentioned in
it, in respect to certain real estate in it described; and
therefore the appellees say that the Registry Law of this
State required it to be recorded to secure it any effect;
and not having been recorded, it can not be used to
defeat or qualify the effect of the deed to James W.
Flack, as against his creditors, for whose benefit he has
conveyed the property to Frank Gosnell.   Greater force

and effect certainly cannot be claimed for this paper, whatever it may be technically, than if the instrument was a formal deed of trust or a mortgage. If a deed or a mortgage to give it any effect as against creditors, or purchasers without notice, it would have to be recorded, (if not recorded within time) before it could have any effect under section 19, of Article 21, or under the provisions of section 33, of Article 16, of the Code, upon application to and order of the Court of Chancery; and in either of those cases it could have no effect after record, to the prejudice of creditors trusting the party grantor after the date of the deed or mortgage and before its record, without knowledge or notice of the existence of such unrecorded deed or mortgage. The statute in each case saves the rights of creditors becoming such without the knowledge or notice of the existence of such deed or mortgage. The Registry Acts of this State were designed to avoid abuses and deceits by mortgages and pretended titles, and for the protection of creditors, and should be construed so as to effect that end. *General Insurance Company vs. United States Insurance Company,* 10 *Md.,* 517; *Nelson vs. Hagerstown Bank, et al.,* 27 *Md.,* 73; *Pfeaff vs. Jones and Roche,* 50 *Md.,* 271; *Stanhope & Co. vs. Dodge, et al.,* 52 *Md.,* 487; *Nally vs. Long, et al.,* 56 *Md.,* 569. In this last case it was a security upon the single bill of a debtor who was protected against an unrecorded mortgage of the principal debtor, of which the surety was ignorant, and was allowed to claim *pari passu* with the debt secured by the mortgage. And in *Stanhope vs. Dodge,* already cited, the Court said that general creditors who have not acquired liens on the land are entitled to come in *pari passu* with the parties whose claims are secured by the deed, and to participate with them ratably in the distribution, and if they have acquired liens on the land they are entitled to priority over those in whose favor the unrecorded deed was made.

Numerous Maryland cases are there cited in support of
this statement of the law applicable to such case.   Assuming that this declaration of trust, or agreement, can
be resorted to to explain the transaction, and show, as it
may legitimately do for the purposes of this decision,
being good as between the parties to it, what. the real
consideration of the deed to James W. Flack was, we
find that he had a direct interest in the real estate con-
veyed to him to the extent of his claim against the grant-
ors for money due from them to him, which claim was re-
leased after the execution of the deed.  In addition thereto,
he, being one of the distributees of his father's estate,
was entitled to one-fifth of the net proceeds of the Can-
ton property.   There was, therefore, a consideration
*moving from him personally* which would *support* the deed;
and his real interest in the property would pass to his
assignee by the deed; and even if the appellants also
have a personal interest and claim on the proceeds of
the property, there would seem to be no good reason for
taking the property from the assignee and turning it
over to them.   They can assert any claim they may have
against the fund in the assignee's hands.   There is no
suggestion, and will be none, that he is not a suitable
person to manage the trust.   All that they can possibly
ask, under the circumstances narrated, would be to make
the amount which James W. Flack, as administrator of
his father's estate, owed that estate on account of the
debts due the estate which he released in consideration
of the deed for the distillery property, share in the dis-
tribution of the proceeds of sale of that property, either
as a preference and lien creditor, under the declaration
of trust, or *pro rata* with the other creditors, as the
Court may decide their rights to be.   *Withers, et al. vs.
Denmead,* 22 *Md.,* 135.  The Court has regularly ac-
quired jurisdiction over Gosnell, trustee under James W.
Flack's assignment of all his property for the benefit of

his creditors, and that trust ought not to be disturbed. By releasing Henry Flack and David H. Flack from their debts to the estate of their father, James Flack became debtor to his father's estate to the extent of those claims, and as administrator he became debtor to the distributees to the extent of their several shares thereof; but in consequence of the releases of the other distributees, to Henry and David, in consideration of ·their deed to James, it may be that James may not be answerable to them for more than their share of what those claims will realize out of the proceeds of the sale of the distillery property. That indebtedness is now payable to the appellants who, by appointment of the Orphans' Court, have succeeded to the administration. The trust James declared bound the distillery property in equity, notwithstanding its non-record, as against general creditors who were such before the deed and agreement, and as against such creditors will give priority. *Carson & Vickery vs. Phelps, Trustee,* 40 *Md.,* 73; *Dyson, et al. vs. Simmons,* 48 *Md.,* 207, and authorities cited in those cases.

Putting that secret agreement, or declaration of a trust, on the basis of an unrecorded mortgage, it would have to give way to the creditors of James W. Flack who became such after the execution of the deed and declaration of trust, and without any notice to, or knowledge of, the latter by such creditors. More certainly cannot be claimed for that secret agreement than to put it on the basis of an unrecorded mortgage. No exception is made in the registry laws of instruments creating trusts; and if there was, a wide door would be opened for the perpetration of abuses and frauds which those laws have been expressly devised to prevent, and which must be enforced and upheld so as to effect the purpose of their enactment. The authorities we have cited all make unrecorded mortgages to yield to debts, created

subsequently thereto, and in ignorance of them, and to share only *pari passu* with them.

But the appellants have contended that inasmuch as David Hudson Flack was in the actual possession of the Canton distillery property from the time of the conveyance to his brother James till the conveyance by James to Gosnell, when he voluntarily surrendered to Gosnell, that the creditors of James W. Flack had enough to put them on notice and inquiry about the true nature of James W. Flack's title.   This Court has said in *Fuller vs. Brewster*, 53 *Md.* 363, that "The mere possession of real estate by one is not inconsistent with title in another; nor is such possession calculated to deceive others, because in regard to the title parties look to the public records, and not to the mere possession of the property itself."   It may be true that David H. Flack did have a sign on the property and was using it for storage purposes.   The property was no longer, however, occupied by both grantors, nor for the same purpose for which they had jointly occupied it.   One grantor still was there, and the other having entirely withdrawn after the deed, certainly the contention of the appellants is not supported.   David was occupying as tenant of James, and inquiry could have so disclosed, and he promptly surrendered to the assignee of James when asked.   If they had gone further and asked the tax gatherer they would have found that James paid the taxes.   We cannot see that the simple fact that *one* of the grantors still occupied a part of the property or even the whole of it, can detract from the force and effect of the recorded deed conveying absolute title for a large money consideration, and deprive the creditors of James W. Flack, the grantor, of the protection which the unqualified deed for the property of record, gave them in dealing with and trusting him. As we have said the failure to record that declaration of trust deprived it of right to priority over creditors of

James W. Flack who became such after the execution of the deed and agreement or declaration of trust. Creditors of James W. Flack subsequent to the deed and agreement are wholly unaffected by that agreement. In the language of the Court in *Dyson vs. Simmons,* 48 *Md.,* 207, they "get exactly what they would have received if the mortgage had not been executed, and in justice they can claim no more." In that case it was an unrecorded mortgage, and the Court held that while their claims were not to be affected by the enforcement of the mortgage, they should not be allowed to take any special advantage from it. The distribution in *Curson & Vickery vs. Phelps, Trustee,* 40 *Md.,* 73, so strongly relied on by appellants, was made in accordance with the rule now adopted; and in doing so that case followed the rule laid down by Chancellor JOHNSON in the case of *Parnell & Smith vs. The Farmers' Bank,* 7 *H. & J.,* 207, and which has been followed in all the cases which have arisen since. In thus deciding we are giving that effect to our registry laws which their language and object require. We could not do less without wholly disregarding their provisions, which, as we think, required the record of that declaration of trust in order to make it effective against others than the parties to it. It has been strenuously argued that this ruling makes these laws operate for the protection of the creditors of the grantee, when the statute only contemplates protecting the creditors of the grantor; but in reply to this suggestion it must be noted that in fact, in this case, the creditors of the *grantor* of that *unrecorded declaration* of trust *are* the *ones protected.* But in our view the object of the registry laws was to prevent frauds actual or constructive from being perpetrated, through the medium of unrecorded instruments, which are intended to qualify muniments of title which gave record notice of absolute ownership. The mischief intended to be prevented was

the holding out of false colors of title to property, by
means of which credit could be secured, and to carry out
that object, every body participating in the deception
must be held to the consequences of participation in such
false showing.   Here the visible record evidence of title
showed James W. Flack to be the owner.   The public
had a right to believe he was so in fact.   Presumably
the record told the truth.   The grantors gave no record
notice of right in prejudice of absolute ownership.   They
concealed their claim through the declaration of trust;
and allowed the public to suppose there was no lien on
the property.   It seems to us that the case falls directly
and fully within the mischief intended to be prevented;
and that the policy, object and scope of our registration
laws would be in large degree disregarded and frustrated,
if we did not hold that the creditors of the grantee should
also be protected, when the transaction takes such form
as to make them the subjects of deception.   The claim-
ants under the declaration of trust by their conduct have
enabled their grantee of the Canton property, to get
large credits on the faith of his unencumbered owner-
ship of the property; and they ought not to be per-
mitted by a Court of equity, to use their incumbrance—
their declaration of trust—to the detriment of persons,
whom they have helped to deceive, although they may
not have designed such result.   In effect, it is but apply-
ing to them the equitable rule laid down in *Busey vs.
Reese*, 38 *Md.*, 269, and *Blennerhassett vs. Sherman*, 105
*U. S.*, 100, that "where one of two persons must suffer
loss by the action of a third person, the loss should fall
on him who has enabled the third person to occasion
loss."   The innocent creditors of James W. Flack ought
not to be made to suffer loss in the interest of those
whose conduct has brought about loss.   Their claim
against James W. Flack as creditors cannot be shut
out; but their lien for it must be.   All that equity can

or ought to do for the plaintiffs is to allow them to share *pari passu* with the other creditors in the distribution of the proceeds of the property. The decree must be affirmed.

*Decree affirmed.*

(Decided 17th March, 1892.)

Judges MILLER and ROBINSON dissented.