## AMERICAN SAVINGS BANK *v.* EISMINGER.*

---

JUDGMENTS; LIENS; TRUSTS; VENDOR AND PURCHASER; NOTICE; CLOUD ON TITLE.

1. The judgment lien conferred by D. C. Code, sec. 1214 [31 Stat. at L. 1381, chap. 854], upon the property interests of the judgment debtor, extends to all lands held by him under apparently perfect legal title at the time of the rendition of the judgment, notwithstanding they are subject to some secret trust capable of being placed upon record. *Quære*, whether a resulting or constructive trust, incapable of record, and in the assertion of which there has been no laches, would yield to the lien also.

2. Where a party buys land from another who has the legal title, which, however, is subject to an unrecorded and secret trust, and the seller retains the deed under a promise to record it, which he fails to keep, and several years afterward judgments are rendered against the seller, in favor of parties who have no notice of the sale, the lien of the judgments is superior to the equitable lien of the purchaser, and the purchaser cannot maintain a suit in equity to remove from the land the cloud of the judgment liens. (Construing D. C. Code, secs. 499,

---

*As to priority of judgment lien as to prior unrecorded conveyance, see note to *Blum* v. *Schwartz*, 16 L.R.A. 668.

1082, and 1214 [31 Stat. at L. 1268, 1359, 1381, chap. 854], distinguishing *Hume* v. *Riggs*, 12 App. D. C. 355, and following *Manogue* v. *Bryant*, 15 App. D. C. 245.)

No. 2089.   Submitted March 2, 1910.   Decided April 5, 1910.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, removing the cloud of a judgment lien from complainant's title to land.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree removing the cloud of a judgment lien from complainant's title to a lot of land.

The facts, about which there is no dispute, are these: George T. Robinson and Daniel K. Trimmer, some time before May 12th, 1903, organized a syndicate of ten persons, whose names are not disclosed, for the purchase of a tract of land in the District of Columbia. The amount of capital to be raised was $15,000, and the purchase was subject to a deed in trust for $76,000. The conveyance was made to said Robinson and Trimmer. The understanding between them and the syndicate was that they were to hold title in trust for the purpose of subdivision into lots and sale, making conveyances to purchasers, and dividing the net proceeds among the syndicate members, in proportion to their interests. The deed to Robinson and Trimmer was absolute on its face, and there was no record of the trust under which they held.

On May 12th, 1903, they sold and conveyed the lot in controversy to the complainant, Edwin F. Eisminger, for the sum of $1,366.31, of which he paid $496.31 in cash. For the remainder he executed fifty-eight notes for $15 each, one maturing each month thereafter. He was to execute a deed in trust to secure these notes, but did not do so. The deed was left with Robinson, to have recorded under an arrangement had with him that he was to record all papers at his, Robinson's, expense. It was not recorded until April 5th, 1907. In the meantime,

the American Savings Bank recovered a judgment against Robinson for the sum of $2,989.30 on January 8th, 1906, and the Washington Exchange Bank, on December 7th, 1906, recovered one against him for $2,400. On January 1, 1906, Eisminger had paid $931.31 of the purchase price. Complainant was unable to say why the deed had not been recorded by Robinson, but supposed he had recorded it. The reason the deed in trust was not executed was that there was a mistake in the recital of indebtedness, and complainant declined to execute. Robinson was to draw up a new one for the correct amount, but failed to do so.

The decree was that the lot be declared free of the lien of said judgments, and defendants be forever restrained from asserting the same. The defendants have appealed.

*Messrs. Kappler & Merillat* for the appellants.

*Mr. Eugene A. Jones* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The general equitable doctrine in respect of the priority of judgment liens over previously acquired interests has been stated as follows: "Unless precluded by the terms of some statute expressly intended to change it, the rule has always prevailed that the equity under a trust or a contract *in rem* is superior to that under a judgment lien. The claimant under the contract *in rem* has an equity to the specific thing which binds the conscience of his grantor; whilst the judgment creditor, who has advanced nothing on the faith of the specific thing, is entitled only to that which his debtor really has at the time, or could honestly convey or encumber,—his beneficial interest, and nothing more." *Hume* v. *Riggs,* 12 App. D. C. 355–367; and authorities cited.

In this case, it will be remembered that the purchase money of the entire tract, of which a part is involved, was advanced

by certain members of a syndicate, and the deed therefor, absolute upon its face, was executed to Robinson and Trimmer. By a secret agreement they were to subdivide and sell the land, making the conveyances, receiving the purchase money, and distributing the net proceeds. They subsequently conveyed the lot in controversy to the appellee, which deed he failed to record until nearly four years from its date, and more than one year after the recovery of appellants' judgment against Robinson. There was no actual knowledge of the state of the title on the part of the appellants when their judgments were rendered, and apparently nothing to put them upon inquiry. Assuming that, in the absence of contrary statutory regulation, the judgment lien would be subordinated to the equities of the syndicate beneficiaries and the title of appellee, it remains to consider the effect of certain provisions of the Code relating to the liens of judgments and the registration of deeds. Section 1214 [31 Stat. at L. 1381, chap. 854] of the Code provides that "every final judgment at common law  * * *  from the date when the same shall be rendered  * * *  shall be a lien on all the freehold and leasehold estates, legal and equitable, of the defendants bound by said judgment  * * *  in any lands, tenements, or hereditaments in the District, whether such estates be in possession, or be reversions or remainders, vested or contingent." Section 1082 [31 Stat. at L. 1359, chap. 854] provides for the levy of execution, among other things, "on all legal leasehold and freehold estates of the debtor in land."

Sec. 499, relating to the taking effect of deeds, reads as follows: "Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified, as aforesaid, and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagors without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds for record." [As amended, 32 Stat. at L. 531, chap. 1329.]

The contention on behalf of the appellee is that the lien conferred by sec. 1214 is limited to the actual, real interest of the judgment debtor in the land, and is intended to be subordinate to all previously acquired interests of others, in accordance with the general equitable principle hereinbefore stated. In our opinion it is to be interpreted in the light of the general policy in respect of record notice of titles and interests, expressed in preceding sections, the purpose and effect of which are important in its efficient operation.

So interpreted, we think it must be declared to have extended the judgment lien to all lands held under apparently perfect legal title by the judgment debtor at the time of the rendition of judgment, notwithstanding the same might be subject to some secret trust, capable of being placed upon record. We say, trust capable of being placed upon record, for that is the case here. Whether a resulting or constructive trust, incapable of record, and in the assertion of which there has been no laches, would yield to the lien also, we intimate no opinion. An innocent purchaser for value from the holders of the legal title would, on general equitable principles, acquire that title discharged of the trust; and the same result would follow from the failure to record evidence of the trust by virtue of sec. 499, for, as has been well said by the court of appeals of Maryland: "No exception is made in the registry laws of instruments creating trusts; and if there was, a wide door would be opened for the perpetration of abuses and frauds, which those laws have been expressly devised to prevent, and which must be enforced and upheld so as to effect the purpose of their enactment." *Hoffman* v. *Gosnell,* 75 Md. 577–592, 24 Atl. 28. See also *Manogue* v. *Bryant,* 15 App. D. C. 245–258. If the sale to the appellee had been made in violation of the trust, he, having no notice of the same, would nevertheless have taken a perfect title; and if he had acquired a lien of any kind by dealing in good faith with the record owners, it would take precedence of the undisclosed interests of others. In making judgments liens, without using any terms of limitation or qualification, it seems clear that they were intended to rank with contract liens

recorded in compliance with the statute. Sec. 1084 [31 Stat. at L. 1359, chap. 854], providing for levy of execution upon lands held under legal title, is likewise without qualification.

We are of the opinion, therefore, that the lien of the appellants' judgment attached to the land, to the extent of Robinson's apparent title, and is superior to the equitable interests of the syndicate beneficiaries, of which the creditors had no notice when their judgments were rendered.

Those beneficiaries are not concerned, for their title passed, with their consent, to appellee by the deed of Robinson and Trimmer, several years before the judgments were rendered. Appellee, therefore, is in the position of one who takes a conveyance of a complete legal and equitable title, and fails to record it until after judgment against his grantor. At any time within three years after its delivery, he could have recorded this deed and escaped all difficulty. Through misplaced confidence in Robinson, he failed to obtain record. Sec. 499 is a substantial re-enactment of an older statute, which had followed still older ones of the same general character, and was intended to prevent the frauds and mischiefs that had attended the keeping secret of conveyances, trusts, mortgages, and liens from creditors and subsequent purchasers. A simple system of record had been provided for giving notice to all the world, the failure to avail of which brings the grantees in all instruments under the provisions of sec. 499. It does not appear whether the indebtedness of Robinson, the record owner, accrued before or after his conveyance to the appellee; but that is immaterial, inasmuch as it ripened into judgments before the record of appellee's deed.

Having no notice of any outstanding title or interest at that time, the lien of the judgment creditor became fixed, and is superior to such unrecorded title or interest. *Hitz* v. *National Metropolitan Bank,* 111 U. S. 722–728, 28 L. ed. 577–579, 4 Sup. Ct. Rep. 613; *Manogue* v. *Bryant,* 15 App. D. C. 245–258. This case is one of great hardship to the appellee, who paid his money and took his title in good faith; but is no greater than that of any other purchaser under similar circum-

stances, and is the necessary result of a statute declaring a sound rule of public policy that must be given effect. The hardship is worked not by the statute, but by the neglect of a party to avail himself of the simple means which the statutes provide for giving notice of titles and encumbrances.

For the reasons given, there was error in the decree removing the liens of the judgments as clouds upon appellee's title, and as to appellants it will be reversed, with costs. The cause will be remanded for further proceedings not inconsistent with this opinion.                                         *Reversed.*