# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 13, 1924.

WILMER C. DAVIS, SADIE C. DAVIS, HIS WIFE,
VS.
THE MUTUAL REALTY ASSOCIATION, A BODY CORPORATE, AND BESSIE B. LLOYD.

*James S. Pennington* for complainant.

*H. Courtenay Jenifer* and *Edward H. Burke* for Mrs. Lloyd, one of the defendants.

STEIN, J.—

The plaintiffs seek to have rescinded the contract of sale and exchange hereinafter named; and to have the mortgage hereinafter named to Mrs. Lloyd from the corporate defendant decreed to be subject to their rights in the mortgaged property.

The testimony is undisputed, shows: That, by a writing, under the hands and seals of parties thereto, dated August 4th, 1921, the corporate defendant, for the sum of $6,825, sold to the plaintiffs, who bought from it, two unimproved fee-simple lots in Baltimore County, Maryland, known as Nos. 8 and 9, Section 8, in North Paradise; upon which lots the corporation agreed "to erect within three months a dwelling, known as Virginia in the Alladdin Company Catalogue." In which contract the parties also agreed that the above sum of $6,825 should be paid as follows, viz:

$6,000 for which the corporation has accepted the property No. 3322 Edmondson avenue, subject to a ground rent of seventy-two dollars; and that the plaintiffs shall remain in the said 3322 Edmondson avenue *"until the completion of house to be erected on North Paradise,"* expense to be adjusted to date that home is vacated as above set forth. The other terms of the contract do not bear upon the question at issue here. The testimony also shows that on August 5, 1921, one day after the date of the above contract, the plaintiffs assigned to the corporate defendant the Edmondson avenue property then subject to two **mortgages**; upon which about twenty-six hundred dollars were due; that five days after this assignment, the corporation mortgaged that property to Mrs. Lloyd, the other defendant, to secure the repayment of the sum of twenty-six hundred dollars and interest; then paid her therefor, a bonus of one hundred dollars; thereafter paid her another bonus of fifty dollars; which sums were the only ones paid to her for or on account of that mortgage; and on which mortgage no interest was paid.

The testimony also shows, that because of financial difficulties existing when the above contract was made, the corporate defendant did very little, if any work towards erecting the house on the above two lots; and for sometime before this suit was brought, had abandoned all effort to continue in and

complete such erection. When they learned this, the plaintiffs attempted to have the corporation finish the house; in so doing, learned of its execution of the mortgage to Mrs. Lloyd; whereupon they promptly, i. e., on April 10th, 1922, eight months after the date of the contract and five months after the expiration time limited therein for the erection of the house, filed this bill to have the above-mentioned contract rescinded and the mortgage to Mrs. Lloyd declared to be subject to their rights under the above named contract.

In her answer, Mrs. Lloyd sets up the validity of her mortgage, and denies all knowledge of the above-named 'contract between the plaintiffs and the corporate defendant.

While, in their bill, the plaintiffs charged the mortgage was fraudulent, they did not attempt to prove that charge. The evidence shows there was no fraud, but that Mrs. Lloyd advanced the $2,600 in cash, to be secured by the mortgage; deducted therefrom her bonus of one hundred dollars; that neither she, nor the counsel then representing her, who was vice-president of the defendant corporation, knew either of the above-named contract between it and the plaintiffs, or that the plaintiffs lived in the house at the date of her mortgage. The negotiations, which resulted in the making of the above-named contract, were conducted by the corporation, solely through its secretary and treasurer, who was its managing officer and signed the contract.

After their failure to prove fraud, without amending their bill, and without objection, the plaintiffs produced testimony, showing that for a long time before, and ever since the date of the above contract, they had continually lived in the Edmondson avenue house as their home; that they did not know of Mrs. Lloyd's mortgage until long after its execution; that as soon as they knew of it, promptly filed this bill. Mrs. Lloyd, the mortgagee, swore she never saw either the plaintiffs or the Edmondson avenue house; that she did not want the mortgage, because a junior lien; but took it solely upon the assurance of her counsel, that it was all right. Her counsel, the vice-president of the corporation, swore he saw the house only from the outside; he did not go inside; did not see either of the plaintiffs, and when the mortgage was made did not have any knowledge, either of the above-named contract with the corporate defendant, or that the plaintiffs were occupying the house, or had any rights therein.

Upon this state of facts, the question here is:

Was the plaintiffs' possession at the date of her mortgage, constructive notice to Mrs. Lloyd, the mortgagee, of their rights under the above-named contract of sale?

The plaintiffs contend their possession was such notice to Mrs. Lloyd, because she could not rely solely upon the Land Records, but that it was her duty to inspect the premises before she took the mortgage, "which proposition has been embodied in our law since Lord Thurlow's time." Fetter's Equity, Sec. 57, Note 22, Folio 85, and which the Supreme Court recognizes in Simmons Creek Coal Company vs. Doran, 142 U. S. 417-433, in the following language:

"Again actual and unequivocal possession is notice, because it is incumbent on one who is about to purchase real estate to ascertain by whom and in what right it is held or occupied, and the neglect of the duty is one of the defaults which unexplained is equivalent to notice."

This doctrine has been recognized and applied by our Court of Appeals in a long line of cases among the earliest of which is:

Hardy vs. Summers 10 G. & J., 316-324; among more recent of which is that of Dinneen vs. The Corporation, 114 Md. 595.

On the other hand, counsel for Mrs. Lloyd concedes this to be the general doctrine, but says that such doctrine does not apply where the vendor remains in possession after deed; and that as Mrs. Lloyd did not have actual notice of the plaintiffs' contract with the corporate defendant, their possession "after deed" did not give her constructive notice of their rights under the contract with the corporate defendant.

The issue thus sharply defined presents unusual difficulties, because of the great conflict of authorities among courts of last resort, and, of authors as to which of the above is the correct doctrine.

This conflict is best illustrated in 39 Cyc., p. 1753, note 35, p. 1754, note 37, which sets out the conflicting doctrines

and contains references to the decisions of the courts of last resort of the various States in which the question arose; from which it appears that: this question was passed on by the courts of last resort in twenty-six States; fourteen which held "that the possession of a grantor after deed, unless long continued was not notice," but such possession was subordinate to the title conveyed; while such courts of twelve States held "that such possession is presumptive evidence that the grantor still retains an interest in the premises and is sufficient to put a purchaser on inquiry."

27 R. C. L., Sec. 491-492, pp. 727-728, 13 L. R. A., U. S. 115 to 120.

There is the same sharp conflict between authors: some mention the conflict of authority without discussion, i. e., 2 Pomeroy Equity, Sec. 617, 2 Tiffany R. P. fol. 2238; others discuss it fully, without positive expression of opinion; as in Devlin on Deeds, 3rd E., Sec. 761 to 764, pp. 1396 to 1404, viz.:

"Where a grantor remains after the execution of a deed in possession of the land which he has conveyed, the question of whether his possession under these circumstances is such that a person contemplating a purchase or acquiring some interest in the land is compelled to take notice of the rights of such grantor, which he may have reserved or which may exist dehors his deed, is a question on which the authorities do not agree. By one class of decisions the rule laid down is that a grantor remaining in possession is entitled to protection to whatever right he may have by virtue of the notice thereof given by his possession, in the same manner, and to the same extent that any other person would be. While on the other hand, by another class of decisions the rule is said to be that a person finding that one in possession has conveyed away his rights by a deed duly recorded, is not obliged to go further and inquire whether the grantor has not some right or interest not disclosed by the record, and to which his possession may be referred."

\* \* \* \* \*

"It is perhaps to be regretted that courts should hold parties bound by any other notice than that furnished by the record."

\* \* \* \* \*

"In as much as our law allows possession to have the effect of notice, there seems to us no good reason for drawing a distinction between cases where a stranger to the title has possession and the grantor remains in possession after the execution of his deed under some title or claim not shown by the records. The possession in either case is the same. In either case it is a fact in conflict with the record Title. If possession by a stranger is sufficient to make it obligatory upon purchasers to ascertain his rights, a possession by the grantor himself after the execution of his deed is a circumstance as much entitled to consideration, and as apt to cause inquiry. \* \* \* But it is said that the grantor is estopped by the execution of his deed. We cannot see why the doctrine of estoppel does not apply with as much force to one case as to the other" \* \* \*.

"There is no question of estoppel, because the full effect of the recorded conveyances is conceded. It seems to us that in these cases, the effect of a possession by a stranger and a grantor ought to be similar. In either case the record shows that the title is vested in one other than the party in possession. In either case, the possession is visible, is of a character of which one occupying the premises must be cognizant. In either case the possession may be under permission of the owner as to appear of record, without any right being held by the party in possession, or in either case the party in possession may claim under an advance title. If possession is protection to one, it should be to the other; whatever can be said of the danger of allowing a grantor, who remains in possession after the execution of his deed to claim a title in conflict with the record title, can be said with equal force against allowing possession by one under any circumstances to affect subsequent purchasers and encumbrances with notice."

A third class of authors discuss the conflict of authority more or less fully, express an opinion, which almost in every case is that a purchaser from a grantee, whose grantor remains in possession unless *long continued*, has not constructive notice of any secret right of such grantor.

Warville on Vendors, Sec. 192, folio 240-241.

"A grantor remaining in possession of the property after conveyance with general warranty, would seem to be effectually estopped by the covenants of his deed, from claiming any rights or interest in the land irrevocable to the grantee and such has been held to be the rule."

\* \* \* \* \*

The mere fact of the retention of possession is in itself insufficient; for the presumption of law in such case is that he remains in possession by permission, and that his holding is in amity with and in subservience to the title he has given. Indeed, a grantor will ordinarily be estopped by his own deed from claiming that his possession is adverse to his own grant.

Wade on Notice, Section 299, fol. 165.

Bigelow on Fraud, pp. 295, 296.

2 Washburn R. P., 3rd Ed., 66.

Thompson on Title to Real Property, Sec. 93, folio 711.

Reese on Real Property, Sec. 1031, folio 1368.

Jones on Mortgages, Sec. 597, folio 570.

Judge Frank in his admirable work on Title, pp. 138, 139, takes the same view.

"In some States, the continued possession by the grantor of the land conveyed by him of record is held to operate as constructive notice to the purchaser from the grantee of any claim that the grantor may have to the land; other courts hold that the grantee's purchaser is entitled to rely on the record and to assume that the possession of the grantor is by the sufferance of the grantee and does not indicate the existence of any adverse rights in him. *The latter would seem to be the Maryland doctrine.*"

Fetter in his work on Equity, Sec. 57, folio 86, is one of the few text book writers, who apparently holds a different opinion.

"Some cases hold that the deed is conclusive that the vendors reserve no interest in the land, and that a purchaser from the grantee has a right to assume, without inquiry, that the vendor is in possession merely for temporary purpose a tenant at sufferance of the grantee. Other cases, *with probably the better reason,* hold that the vendor's possession after the delivery of his deed, is a fact inconsistent with its legal effect, and is suggestive that he still retains some interest in the premises, and that therefore his possession is as effectual a notice as that of a stranger to the record title."

In Maryland there are but two cases in which this doctrine was involved; one that of Ringgold vs. Bryan, 3 Md. Ch. 488, 493 to 495, which while a non prius case, held that the possession of a grantor after the execution of the deed is constructive notice of a secret equity. The record shows that Mary Ringgold and her husband sold to their son-in-law Hobbs a tract of land and premises under an unrecorded written contract, in which he was to pay her annually interest on the purchase money, and in which she reserved for her own use during her life the dwelling house, kitchen, meat house, poultry house and garden, with the privilege of getting firewood, of pasturing four head of cattle and raising any kind of poultry, except turkeys. On the day when the contract was executed, Mrs. Ringgold and her husband conveyed the farm to Hobbs absolutely deed, in which the consideration as expressed on the face of the deed was $3,000, to them in hand paid by the grantee. Nearly six years thereafter, Hobbs mortgaged the property to Bryan, who thereafter brought the property to a Sheriff's sale; about one year after this purchase Mrs. Ringgold, then a widow, filed a bill to enforce against him her rights under the unrecorded contract. In his answer Bryan denied any notice of the contract until shortly after the purchase at the Sheriff's sale. After discussing, at some length, the question as whether or not there was competent evidence to show Bryan had actual notice, the Chancellor said, folio 493:

"But conceding the objection to the competency of the witness is well taken, there is surely enough left to subject the defendant Bryan *to the consequences of notice.* That there were awakening circumstances in this case, sufficient to put him on inquiry, is undeniable, and as remarked by the Court of Appeals in Magruder vs. Peter, 11 G. & J. 243, "Whatever is sufficient to put a party upon inquiry is good notice in equity."

\* \* \* \* \*

The other case is that of Hoffman vs. Gosnell, 75 Md. 589, in which that Court, Irving, J., held, page 593, that:

"The simple fact that one of the grantors in the absolute deed continued to occupy a part of the property, did not detract from the effect of such recorded deed, nor deprive the creditors of J., i. e. (the grantee), of the protection which such deed gave them in dealing with and trusting him."

While these cases are apparently in point and their opinions seem to conflict, yet it seems to me that a careful examination of the record in each will show not only a different state of facts from that in this case, but that the principles applied agree, and that each case contains matters that so distinguish it from the case at bar, as to keep it from being adopted as here controlling so that I examined not only all text book writers, but the cases in the Courts of last resort of all States, in which this question has been passed upon so as to learn from them which of the above doctrines is correct.

That an examination of these cases was necessary is shown not only because the numerical division of authorities by the States is so nearly equal, but because the weight of authority was balanced even more nearly than the number; some of the opinions being written by judges and authors equally eminent and learned and were equally as well reasoned and fortified by authority.

Among the best discussions of the view that possession of a grantor after deed is constructive notice is found in the two cases of Turman vs. Bell, 54 Ark. 273 and Graff vs. The Bank, 50 Minn. 224.

Turman vs. Bell, 54 Ark. 263, 280, holds:

"As a general rule the possession of land gives notice to all the world of the rights of the occupant, when there is no record evidence of his right of possession, but to this rule there are well established exceptions whether the continuing possession of a grantor, after he has executed deed of general warranty comes within the rule or its exceptions, was suggested but not decided by the Court in the case of Gill vs. Harden, 48 Ark. 409.

"Between the Appellate Courts of other States there is an irreconcilable conflict of ruling, and upon either side are to be found Courts of the highest authority.

"Those that sustain the application of the rule say that, by the terms of the deed, the grantor has not the right of possession and that his continuing possession gives notice that he has rights reserved not expressed in that deed; that inasmuch as the records disclose no right of possession, it is but reasonable to conclude that continuing possession rests upon some right not disclosed by the records, and that the reasonableness of such conclusions impose upon persons about to deal with the land the duty to make inquiry. * * *

On the other side, it is said that the execution of a warranty deed, without reservation, in a most solemn declaration by the grantor that he has parted with all his rights in the property, and directly negatives the reservation of any right. That those who see the deed are warranted in relying upon such declaration as much as if it has been made to them orally upon inquiry, and that if they acquire interest in faith of such reliance, the grantor in possession will be estopped to assert any right secretly reserved from the grant. That as the grantor has declared that he parted with his entire estate, strangers about to deal with the property would reasonably refer his continued possession to the sufferance of the grantee, and would not reasonably think to refer it to a reserved right."

*  *  *  *  *

"If the possession has continued after the making of the deed *but a short time*, it might be reasonably inferred to the sufferance of the grantee; but where it was long continued it would more strongly imply a right in the occupant, and the implication would be sufficient to cast upon strangers the duty of inquiry.

We think with all deference to those who deny the application of the rule in such cases, that the controlling fact upon which their argument proceeds is assumed. Ordinarily the terms of a general warranty deed import a declaration that the grantor has reserved no rights in the subject

of the grant, and by themselves may always bear such implication. But possession is ordinarily notice of a claim of right; and where a grantor continues in possession at the time of the grant, *and for a considerable time thereafter*, should not the fact of possession be construed as an assertion of reserved rights, and as a limitation upon the provision of the deed? True, the deed above denies the reservation of equities, but it denies equally the right to continue possession. If the grantor then holds open possession against the terms of his deed, is it not a reasonable implication that he has rights not expressed in it? If possession thus qualifies the terms of the deed, and it *is open and continued*, then the doctrine of estoppel cannot apply for the grantor may as well expect persons to take notice of his possession as well as of his deed."

In the other case of Groff vs. State Bank, 55 Minn. 244, it holds:

"Possession by grantor after the delivery of his deed is as effectual notice of his interest in the granted premises, as against the creditors of the grantor, as is the possession by stranger to the record title."

"But it seems to us that inasmuch as the law allows possession to have the effect of notice, there is no good reason for making a distinction between possession by a stranger to the record title and possession by the grantor after the delivery of his deed. In either case the possession is a fact inconsistent with the record title, and if possession by the stranger is sufficient to make it obligatory to ascertain his right, possession by the grantor is a circumstance entitled to equal consideration. An absolute deed divests the grantor of the right of possession as well as of the legal title, and where he is found in possession after delivery of his deed, it is a fact inconsistent with the legal effect of the deed, and is suggestive that he still retains some interest in the premises. Under such circumstances a purchaser has no right to give controlling provision to the legal effect of the deed in disregard of the other notorious antagonistic fact that the grantor remains in possession just as if he had not conveyed. To say that the grantor is estopped by his deed is begging the question, for, if his possession is notice to third parties of his rights, there is no principle of estoppel that would prevent him from asserting against purchaser or creditors any claims to the premises which he might assert against his grantee. This view is abundantly sustained by authority."

On the other hand the text book writers not only support the contrary doctrine but the Courts themselves attempt to distinguish the effect of a short possession by a grantor after deed, from a long continued possession, holding that a short possession is not constructive notice. This was done by the Arkansas Court after the decision of Turman vs. Bell, 54 Ark., supra, in the case of Morgan vs. McCuin, 96, Ark. 512, 519, 520, in which that Court held that:

"Where a grantor, after having executed a deed, remains for a *short time* in possession of a portion of the premises conveyed, he is *presumed to hold a subordination to the title conveyed*, unless there is evidence of a contrary intention.

"That if possession by the grantor is continued but a *short time* after the making of a deed, it may be reasonably referred to the sufferance of the grantee; but where it is *long continued*, it implies a *right* in the occupant and the implication is sufficient to put upon strangers the right to inquire."

Hockman vs. Thomas, 68 Kansas 519:

"The great weight of authorities sustains the rule that when a vendor of real estate remains in possession after he has conveyed the property, he will not be allowed to assert secret equities in his farm respecting the land—for by his deed he has declared to the world that he has no right of possession. * * * A purchaser from the grantor of the party in possession need not inquire whether such party has reserved any interest in the land conveyed. So far as the purchaser is concerned the actual occupant's deed is conclusive upon that point. The object of the law in holding possession constructive notice, is to protect the possessor from the *act of others* who do not derive their title from him, not to protect him against his *own acts*. Therefore where a grantor executes and delivers a deed of conveyance to go upon record, he says to

the world—"Though I am yet in possession of the premises conveyed, it is for a temporary purpose without claim of right and merely as tenant at sufferance of my grantee."

Koon vs. Tramel, 71 Iowa 132, 136, 137:

"An examination of adjudged cases will show that the great weight of authority is to the effect that possession by the grantor after a full conveyance is not constructive notice to subsequent purchasers of any right reserved on the land of the grantee."

\* \* \* \* \*

"A party ought not to be allowed to contract the force and effect of a full conveyance by the mere fact of possession after the deed is recorded."

McNeil vs. Jordan, 28 Kansas 7:

"Such a grantor though in actual possession is presumed to hold the same for a *temporary purpose*, without claim of right and merely as a tenant at sufferance of the grantee.

"A purchaser from the grantee of the party in possession need not inquire whether such party has reserved any interest in the land conveyed; so far as the purchaser is concerned the actual occupant's deed is conclusive on that point.

"The object of the law in holding possession, constructive notice is to protect the possessor from the *acts of others* who do not derive title from him, not to protect him *against his own acts*—not to protect him against his own deed."

Work vs. Brayton, 5 Ind. 396, 399:

"It is true that the appellant was in possession of the land when the plaintiff took the conveyance from Roberts, but, having sold and conveyed to Roberts, his continued possession imparted no constructive notice of any claim of right on his part adverse to the title so conveyed. On the contrary it was to be presumed that his possession under such circumstances was that of a mere holdover or tenant at will of the grantee, to whom his conveyance had been made."

Koon vs. Tramel, 71 Iowa, 132, 137:

"A party ought not to contradict the force and effect of a full conveyance by the mere fact of possession after the deed is recorded."

Exon vs. Dancke, 24 Oregon 110, 114:

"We are of the opinion, however, that the reason as well as the *decided preponderance* of authorities, is to the effect that a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record a deed from such vendor properly conveying the title to the person from whom he is about to purchase. Any inquiry suggested by such possession is fully answered by the record, and is prosecuted sufficiently far when the examination of the record discloses a deed from the person in possession to the person who offers to sell, and who is claiming and asserting title under such deed."

These cases show the conflict of authority, and the chief reasons underlying the difference in view. Which of them is the better or which, if any is the rule in Maryland need not be here decided, because I find in this case two things, either one of which is controlling.

1. That the plaintiffs assigned the property to the corporate defendant on the day after the date of their contract, and the corporation made its mortgage to Mrs. Lloyd five days thereafter, so that under the language in 178 Iowa 223, supra, "the plaintiffs continued possession of five days imparted no constructive notice to Mrs. Lloyd of any claim of right on their part adverse to their grantee's title, but it was to be presumed that their possession under such circumstances was that of a mere holdover or tenant at will of the corporate defendant to whom their conveyance had been made.

2. There is another and better ground upon which the opinion in this case should be based and that is: "when one of two persons must suffer loss by action of a third person, the loss should fall on him who has enabled the third person to occasion such loss."

Hoffman vs. Gosnell, 75 Md. 595, or as more bluntly put in Quick vs. Milligan, 108 Ind. 419, 422:

"He certainly who trusts most ought to suffer most."

The plaintiffs, the day after the signing of their contract gave a deed although they then knew the house had not been built; knew that such deed assigned their home absolutely to the

corporate defendant, without reserving or mentioning their right to remain in possession, until the house was built on the lots at North Paradise. Having done this, the plaintiffs should not be allowed to set up to the prejudice of Mrs. Lloyd their rights under a contract of which she did not have actual knowledge or notice.

This is especially so when under that contract, the assignment of their home was a present payment, by the plaintiffs of six thousand dollars on account of the lots and the house to be erected thereon.

In Murry vs. Carlton, 65 Washington 364, 365, the Court said that which is particularly appropriate here, viz.:

"We have examined these cases and find that many of them do sustain the general rule continued for. But in all of them, it is where the party in possession is without fault, and has done nothing to mislead the subsequent purchasers or incumbrances, and it may be conceded that such is the general rule. But this is an equitable doctrine, and the circumstances of each case are always scanned by the Court to determine what the equities are. It is one of the oldest maxims of the law that he who asks equity must do equity. The same principle is announced in another maxim, that he who comes into a court of equity must come in with clean hands, and there must be no circumstances for which he is responsible that would rightfully estop him from demanding his strict rights under his possession. It is also an ancient and respected principle of the law that, when one of two innocent parties must suffer, the one who was the cause of the misfortune must bear the burden, rather than the other, and all these principles enter into and modify the general rule announced."

To adopt any other rule in this case, would defeat the objects of our registry law.

"All presumption of right, or claim of right is rebutted by the plaintiffs' own act and deed. One of the many objects of the registry law would be defeated by any other rule."

Bloomer vs. Henderson, 8 Michigan 395-405.

I will sign a decree dismissing the bill. The plaintiffs to pay the costs.