PATRICK J. McNAMARA et al.

*vs.*

CHARLES E. FEIHE et al.

*Motion to Dissolve Injunction—Bona Fide Purchaser—Secret Trust—Equitable Estoppel—Possession as Notice.*

When a motion to dissolve an injunction is heard on bill, answer and proof, the burden is on plaintiffs to establish their right to an injunction by a clear preponderance of the evidence. p. 520

Where, though definitely advised, by a representative of the intending purchaser, of the proposed sale of property by the owner of the record title, the beneficiaries under a secret trust therein made no claim of interest, *held* that they were equitably estopped to assert their claim as against such purchaser, after he had bought the property in good faith and for value.

p. 520

Possession by the father and sisters of the owner of the record title to property *held* not sufficient to put purchasers on inquiry as to the rights of the father and sisters in the property, the purchaser's representative, though in communication with them before the sale, not having been apprised of their claim, and one of the sisters having referred such representative to the holder of the record title for permission to inspect the premises. p. 520

*Decided November 30th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Patrick J. McNamara and others against Charles E. Feihe and others. From an order dissolving an injunction, plaintiffs appeal. Affirmed.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, and Offutt, JJ.

*George S. Yost,* with whom were *Stephen P. Campbell* and *Emil Budnitz* on the brief, for the appellants.

*J. Royall Tippett,* with whom were *Wm. Jerome Kelly* and *Richard B. Tippett & Son* on the brief, for the appellees.

Urner, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by Patrick J. McNamara and his two daughters, Mary Manion and Cathcrine Gibson, and the purpose of the proceeding is to protect their alleged right of possession of a dwelling house in Baltimore, under an unrecorded declaration of trust, as against purchasers of the property who acquired it from the owner of the record title. A preliminary injunction was issued, as prayed in the bill, restraining the purchasers, Charles E. Feihe and Anna V. Feihe, his wife, from further prosecuting certain suits at law which they had instituted to secure possession of the property. The appeal is from an order dissolving the injunction after a hearing on a motion filed for that purpose.

It is alleged in the bill that on October 20th, 1913, the property referred to was purchased by Bernard J. McNamara, son of the plaintiff, Patrick J. McNamara, with money advanced by the latter, and that the title was taken in the son's name with the understanding, expressed in a written agreement, that the property was intended for the use of his father and mother and their children, and that he should not sell it without his parents' consent. In accordance with that agreement, the bill avers, the plaintiffs entered into possession of the property and have occupied it continuously to the present time, but it is charged that, contrary to the terms of the agreement, the property was sold and conveyed

by Bernard J. McNamara to the persons already mentioned, who are seeking to obtain possession of it by the actions which are sought to be restrained. Associated with the purchasers and Bernard J. McNamara, as a defendant, is a mortgagee to whom the former conveyed the property as security for a loan of the purchase money.

The answers of the defendants denied under oath the material allegations of the bill of complaint. The purchasers asserted in their answers that they became the lawful owners of the property without actual or constructive notice of the plaintiff's alleged interest, and Bernard J. McNamara specially denied in his answer the agreement on which the plaintiffs rely.

It appears from the testimony that Bernard J. McNamara, who is a Catholic priest, did not himself live in the house now in litigation, but regularly paid the taxes, ground rent and mortgage interest chargeable against the property, except in 1918, while he was serving overseas as a chaplain in the American army. Being unable to continue the payment of these charges, he offered to sell the property to his father, who declined the offer, and it was then sold to Mr. and Mrs. Feihe. It was testified by Mr. William J. Kelly, who represented the purchasers, that he called to see Patrick J. McNamara and told him of his son's desire to sell the property and to give him the first opportunity to buy it, and that in reply the father said, "under no circumstances would he buy, he had his money well invested and property was too high, and under no conditions would he buy, and if Father McNamara sold the property, he would be sorry." He made no claim, by virtue of the agreement now relied on or otherwise, of the right on the part of himself and daughters, his wife being then deceased, to continue their occupancy. In regard to that interview, Patrick J. McNamara testified: "He told me my son was going to sell the property. I said I do not see how he could sell it, but, however, I said there is something

peculiar happens once in a while. Well, he says, will you buy it? I said, if it is not bought once for me I cannot buy it again, and then he said it is in debt and your son is not able to pay. I said, as far as my son's debts are concerned they are none of my contracts, although I am willing to pay for them." In response to the statement, after his own refusal to buy, that the property would be immediately sold to another person, he said, according to his testimony: "I think that would be foolish, but I cannot help it, if you people want to go on in that kind of a way." There was no suggestion in any part of the testimony of this plaintiff that he claimed, while the negotiations for the sale were in progress, the right to remain in possession under the terms of an unrecorded agreement or on any other ground.

One of his daughters testified that, when the persons who afterwards became the purchasers called at the house to inspect it, she told them it was not for sale, and that if they wanted to see it, they would have to get Reverend McNamara to show it to them, which was done subsequently. This witness stated that she heard from the next room the conversation to which we have referred, between her father and Mr. Kelly, and that her father said he owned the property and did not care to buy it a second time. Mr. Kelly contradicted this testimony and it is not supported by Patrick J. McNamara's own version of the interview. The proof is convincing that the purchasers had no intimation from any source that the plaintiffs claimed any interest in the property, of which the vendor appeared of record to be the absolute owner.

Three weeks before the deed to the purchasers was executed, their attorney, Mr. Kelly, wrote a letter to Patrick J. McNamara, advising him that his clients had bought the property and desired possession within a reasonable period. But no question appears to have been raised by any of the plaintiffs as to the validity of the sale until some time after it had been consummated by a conveyance of the title.

Upon the case presented by the evidence the court below was right in dissolving the injunction. The motion to dissolve having been heard on bill, answer and proof, the burden was on the plaintiffs to establish their right to the injunction by a clear preponderance of evidence. *Easter* v. *Overlea Land Co.,* 129 Md. 627. They failed to sustain that burden. It was incumbent upon them to prove, as an essential element of their case, that the purchasers had some actual or imputable notice of the interest now asserted by the plaintiffs in opposition to the title which the public records disclosed. The weight of the evidence is against the theory that such notice was received or could be properly imputed. There was ample opportunity afforded the plaintiffs to make known their claim before the purchasers acquired the right of which they are now sought to be deprived. Though definitely advised that the sale of the property was intended, the plaintiffs appear to have made no statement which could be construed as a claim of interest affecting the title proposed to be sold and conveyed. Their silence under such circumstances prevents them from now disputing the title which the purchasers acquired in good faith and apparently for full value, and which they have conveyed to a third person by way of mortgage. It is a case which requires the application of the rule of equitable estoppel. *Carmine* v. *Bowen,* 104 Md. 198; *Carroll* v. *Manganese Co.,* 111 Md. 252; *Rodgers* v. *John,* 131 Md. 455; *Guaranty Securities Co.* v. *Equitable Trust Co.,* 136 Md. 417.

The theory that the possession of the property by the plaintiffs should be held to have put the purchasers on inquiry as to the existence and nature of the plaintiffs' rights does not render the doctrine of estoppel inappropriate to the facts of this case, because the purchasers, through their representative, were actually in communication with the plaintiffs before the sale was made, and were not apprised of the claim now sought to be enforced. Besides, the possession of the property by the plaintiffs, as the father and sisters of the

owner of the record title, was consistent, under the circumstances, with his absolute ownership, especially in the view of the prospective purchasers who were referred to him, by one of the plaintiffs, for permission to inspect the premises. To the special conditions here proven, the cases cited and the argument made in support of the theory of imputable notice from possession are not applicable.

*Order affirmed, with costs and cause remanded.*