## ANNA M. WICKLEIN *v.* WILLIAM J. KIDD ET AL.

*Execution of Deed—Fraud and Undue Influence—Bona Fide Purchaser Protected—Notice From Possession By Tenants.*

Plaintiff having stated that she did not remember whether she signed certain deeds, and not being able to testify, or to produce witnesses, as to the details of the signing, the court, in determining that she did sign them, was compelled to accept the version of the defendants as to the circumstances of the signing. pp. 420, 421

In a suit to enjoin foreclosure sales under mortgages executed by persons claiming under deeds purporting to have been executed by plaintiff, *held* that, the evidence showing that plaintiff executed the deeds, the mortgagees, as *bona fide* holders for value, were protected as against her claim that the deeds were procured by fraud and undue influence, and without the payment of any consideration. p. 421

Possession of property by tenants of the vendor is not notice that the vendor is being taken advantage of, or that the vendor has rights in the property in conflict with the rights of the vendee, it being only when property is in the possession of one other than the vendor or those claiming under him, that a prospective purchaser is generally put on notice as to the rights of the person thus in possession. p. 422

The fact that the grantor's tenants are in possession of the property at the time of the conveyance is not notice, to one who

at that time takes a mortgage from the grantee to secure a loan, of conflicting rights in the grantor, or of a lack of *bona fides* in the transfer.                                        p. 422

In the case of a mortgage executed about a month after the mortgagor acquired title thereto, the failure of the mortgagee to ascertain to whom the tenants of the property were paying rent, *held* not to charge it with notice that the mortgagor's grantor, whose tenants were in possession, had a claim to the property.                                        p. 423

One who in good faith lends money on mortgage to another, to enable such other to purchase property, is not under the duty, as regards the vendor, of seeing that the latter actually receives the money thus lent.                                  pp. 423, 424

The failure of the original grantor to receive the full consideration for a deed will not, of itself, invalidate the deed in the hands of one who, in good faith and for value, purchased the property from the grantee.                            p. 424

One who places properly executed deeds for her properties in the hands of persons who later borrow on the properties from innocent third parties, can not assert claims to the properties as against the lenders, the case calling for the application of the principle that when one of two persons must suffer loss by the action of a third person, the loss should fall on him who has enabled such third person to occasion the loss.        p. 424

*Decided January 12th, 1926.*

Appeal from the Circuit Court of Baltimore City (UL-MAN, J.).

Bill by Anna M. Wicklein against William J. Kidd and others. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William H. Surratt*, with whom was *Paul R. Hassencamp* on the brief, for the appellant.

*Robert W. Beach,* for Florence G. Beach, trustee, appellee.

*Harry O. Levin,* with whom was *Albert H. Blum,* for Philip Blum, appellee.

*Harry Greenstein,* for the Economy Building and Loan Assn., appellee.

WALSH, J., delivered the opinion of the Court. ·

The bill of complaint in this case was filed below by Anna M. Wicklein, the appellant, against William J. Kidd, Florence G. Beach, Trustee, the Economy Building and Loan Association, a corporation, and Philip Blum, the appellees, and also against Carl W. and Matilda Weissenborn, but before the taking of testimony it was, at the plaintiff's request, dismissed as to the Weissenborns. The bill asked that foreclosure proceedings instituted by the Economy Building and Loan Association against certain properties in Baltimore City formerly owned by the appellant be enjoined, that Florence G. Beach, Trustee, and Philip Blum, be enjoined from disposing of the mortgages they held against certain of these properties, that all of the appellees be required to disclose their financial dealings with the appellant, particularly the transactions whereby William J. Kidd acquired title to, and the other appellees secured mortgages on, the properties at 417 and 423 W. West Street and at 1112, 1114 and 1118 Warner Street, which properties the bill alleged had belonged to the appellant for many years, and had never been conveyed away nor encumbered by her. At the completion of the taking of testimony in the court below, the plaintiff asked and received permission to withdraw her original bill of complaint, which charged that the properties in question had never been conveyed by her, and to file an amended bill in which it was alleged that if the properties had been conveyed by her the deeds conveying them were secured by fraud and were without consideration. The appellant is a widow over seventy-five years of age, and prior to 1924 she was the owner of the properties involved in these

proceedings, and of certain other property, all of which consisted of small houses located generally in South Baltimore, in which section the appellant also resided. She had been acquainted for a number of years with one Max Weissenborn, an employee of the Appeal Tax Court in Baltimore, and, after the death of her husband in 1912, she had various business transactions with Max Weissenborn, including the borrowing of money on one or more occasions from a building association with which he was connected. Later on she became acquainted with Carl Weissenborn, the son of Max Weissenborn, and he attended to the sale of a house she owned on Light Street. It also appears from the record that the appellant had Max Weissenborn attend to the payment of her taxes at various times, and wrote him a number of letters about her taxes and building association loans, that she also borrowed money on at least one occasion through Carl Weissenborn, wrote him on April 14th, 1924, suggesting that he try to get an offer for her properties at 417 and 423 Warner Street, and that she seemed to have great confidence in and considerable regard for both the Weissenborns. On October 3rd, 1923, and on December 14th, 1922, the appellant gave confessed judgments for $2,000 each to Max Weissenborn, and he endorsed the same apparently to Carl Weissenborn, and on November 23rd, 1923, she gave a confessed judgment for $2,000 direct to Carl Weissenborn. These notes were discounted and recorded, and the proceeds, with the exception of either one or two thousand dollars which was given the appellant, went to Carl Weissenborn, though he gave no consideration for them. It further appeared that at the time this suit was brought Carl Weissenborn was serving a four years' sentence in the Maryland Penitentiary, which sentence was imposed upon him in the summer of 1924 for his confessed theft of an automobile.

On May 3rd, 1924, the appellant, while at the Maryland General Hospital, where she had been for four or five months as the result of an injury to her hip, executed a deed conveying the properties at 417 and 423 W. West Street to

William J. Kidd, one of the appellees, and on the same day Kidd gave a mortgage for $4,000 on these same properties to Florence G. Beach, Trustee, another of the appellees. On May 14th, 1924, the appellant, who was then at her home, executed another deed conveying the properties at 1112, 1114 and 1118 Warner Street to Kidd, and on May 19th, 1924, he gave a mortgage for $5,000 on these properties to Philip Blum, one of the appellees. And on June 10th, 1924, Kidd gave another mortgage for $1,400 on all the above properties to the Economy Building and Loan Association, the remaining appellee. The weekly payments called for by this last mortgage not having been paid, and no word of any sort having been received from Kidd, to whom notices of the payments due were sent, the loan association secured a decree of foreclosure and advertised the properties for sale. The appellant acquired knowledge of the foreclosure proceedings from the notices of sale posted on the properties, and she thereupon filed her original bill of complaint in this case, alleging that she had never conveyed the properties to any one, and that the signatures to the two deeds were forgeries. After the testimony was taken, however, she filed, as we have seen, an amended bill stating that she did not recall signing the deeds, but that if she did sign them they were given without consideration and were procured by fraud.

The testimony shows that both of the deeds in question were procured at the instance of Carl Weissenborn, that Kidd was simply a straw man who took title to the properties, and executed the mortgages at the request of Weissenborn, he being paid a nominal fee for this service; that the proceeds of the three mortgages went to Weissenborn; and that the appellant received no consideration for the deeds. As each of these mortgages constituted a different transaction, it will be necessary to treat each one separately.

On or about May 1st, 1924, Carl Weissenborn, who had previously sold one of the above mentioned two thousand dollar confessed judgments to the Joseph H. Pentz Company, advised Mr. Robert W. Beach, the attorney for that

company, that he was about to purchase the properties at 417 and 423 W. West Street from Mrs. Wicklein, and asked Beach if he could obtain a mortgage loan of $4,000 on the properties for him. After looking at the properties, Beach agreed to get the loan from his sister, the appellee Florence G. Beach, examined the title to the properties, and prepared a deed conveying them from the appellant to William J. Kidd, Weissenborn having told him that because of the existence of certain judgments against him he desired the title placed in Mr. Kidd's name. On May 3rd, 1924, Beach sent Charles E. Parr, a notary public and bookkeeper for the Joseph H. Pentz Company, to the hospital with the deed, instructing him to read the entire deed to the appellant, and to then have her sign and acknowledge it. Parr returned with the deed properly executed, and advised Beach that the appellant had stated that she knew all about the deed and that there was nothing she wouldn't do for Mr. Weissenborn. It also appeared that, at the time Weissenborn sold the $2,000 judgment note to the Joseph H. Pentz Company in November, 1923, Mr. Beach had taken the note to Mrs. Wicklein's residence to verify her signature, and he testified that she then told him that the note was all right, that she had the utmost confidence in Weissenborn, that he represented her, and that she had known both him and his father a long time. After Parr brought the deed from the hospital, Beach, Weissenborn and Kidd met in Beach's office, Kidd executed the $4,000 mortgage on the properties, and Beach turned over to Weissenborn or Kidd in cash the $4,000, less fees and expenses, and on the same day recorded both the deed and mortgage. Kidd, on that occasion, also signed and acknowledged a blank deed which was delivered to Weissenborn and was apparently intended for use by him at a later date in transferring title to the properties to himself or to some third party.

On May 14th or 15th, 1924, Mr. S. J. Lion, a loan broker, applied to the appellee, Mr. Philip Blum, who had been en-

gaged for five years in the real estate and mortgage business, for a mortgage loan of $5,000 on the properties at Nos. 1112, 1114 and 1118 Warner Street, and, after examining the properties and talking to several of the tenants, Mr. Blum consented to make the loan. He had the title examined by his son, Albert H. Blum, an attorney at law, and the latter, finding the record title in Anna M. Wicklein, the appellant, prepared a mortgage from her to his father. On May 19, 1924, the two Blums, Lion, Kidd, and Carl Weissenborn met in Lion's office and the Blums were then advised that Kidd had purchased the property from the appellant for $7,500, that Weissenborn was the agent of the appellant, and that Kidd would give the mortgage. Kidd's name was then substituted in place of the appellant's, a clause stating that the mortgage was a purchase money one was added, and upon Weissenborn producing an apparently properly executed deed conveying the properties from the appellant to Kidd, the mortgage transaction was completed and a check for the proceeds of the loan, amounting, after the deduction of fees and expenses, to $4,724.55, was given to Kidd. Mr. Blum's son, whose check was given to Kidd, then accompanied the latter to the bank where the check was cashed, the money turned over to Weissenborn, who explained Mrs. Wicklein's absence by stating she was in the hospital, and the deed and mortgage were then promptly recorded. The deed involved in this transaction was signed and acknowledged on May 14th, 1924, before Matilda Weissenborn, a notary public and the wife of Carl Weissenborn, and both the Weissenborns testified that the appellant knew and understood what she was doing at the time she executed it, and they both further testified that this deed was given by Mrs. Wicklein for the purpose of helping Carl Weissenborn out of some financial difficulties, and Carl himself stated that the deed of May 3rd, 1924, was given by her freely and voluntarily for a like purpose, and that he had given her his promissory notes in payment for the properties. At the time of the settlement, Mr. Blum was also advised that Kidd had already

made a payment of $500 on the purchase price, and that the balance due her, including the amount received from the mortgage, would be paid to the appellant by Weissenborn.

About June 1st, 1924, a Mr. Schimmel applied to the Economy Building and Loan Association, in the name of Kidd, for a loan of $2,000 to be secured by a second mortgage on the properties at 1112, 1114 and 1118 Warner Street and 417 and 423 W. West Street. This application was referred to the association's loan committee, and after a personal inspection and appraisal this committee recommended a loan of $1,400. Mr. Harry Greenstein, attorney for the association, examined the title and prepared the mortgage from Kidd to the association, and after paying the expenses and the 1924 taxes on three of the properties, the balance of the loan, amounting to about $1,000, was turned over to Kidd, the apparent owner. At the time the settlement was made, on June 10th, 1924, there were present Messrs. Greenstein, Kidd, Schimmel, and Lion, the last named also appearing in this transaction as a broker.

It also appeared that waivers of the three $2,000 judgments heretofore mentioned were filed as to all three of the mortgages held by the appellees in this case, these waivers being given by the various assignees of the judgments at the time each mortgage transaction was closed.

In her original bill of complaint, and in her testimony, the appellant denied ever signing the deeds here involved, but the proof that she did sign them was so overwhelming that at the conclusion of all the testimony she asked and received permission to file an amended bill, in which she stated that she did not remember signing the deeds, and alleging that if she actually did sign them her signature was obtained by fraud and undue influence and without her knowing what she was doing. While on the stand the appellant not only denied signing the two deeds, but she also denied signing the confessed judgments, and many of the letters to the Weissenborns, which were filed as exhibits, and she finally denied that she had signed the original bill of complaint filed in

this case. She also denied that she had ever seen Mr. Parr, who took her acknowledgment of the first deed at the hospital, did not remember whether or not she had ever seen Mr. Beach, who called at her home to verify her signature to one of the confessed judgments, and denied that she had ever seen Mr. Greenstein, who called to see about the mortgage of the Economy Loan and Building Association after this bill was filed, or Mrs. Weissenborn, who took her acknowledgment of the second deed. Against these denials and failure of memory, we have the positive testimony of Mr. and Mrs. Weissenborn, and of Messrs. Parr, Beach, and Greenstein, that they all did see her, the testimony of the appellant's housekeeper, Miss Erkes, that Mr. Greenstein called on the appellant and talked to her about this case, and the testimony of Mr. S. C. Malone, a recognized handwriting expert, that all the signatures disputed by the appellant were genuine. In addition to this the appellant testified that she had only one transaction with Max Weissenborn, while her own letters show that he attended to numerous matters for her, and she denied having ever asked Carl Weissenborn to sell her Warner Street houses, whereas her letter to him, dated April 14, 1924, specifically asked him to try and secure a purchaser for them. There are other contradictions and inconsistencies in her testimony, and much that she said was incoherent and unintelligible, but it would unnecessarily prolong this opinion to set out in any further detail what she said. We have already stated enough to show conclusively the genuineness of her signatures to the deeds of May 3rd and May 14th, 1924.

Since the appellant first elected to deny her signatures, and later, in the face of overwhelming proof that the signatures were hers, changed her position to one of not remembering whether or not she signed the deeds, she was not able to testify to any of the details attending their execution, nor were any witnesses produced by her who testified about these details. The result is that, having determined that the appellant did sign the deeds, we are compelled to accept the version of the

witnesses for the appellees as to the circumstances under which they were signed, and to hold the deeds valid, unless these circumstances were sufficient in themselves to show fraud or undue influence.

In the view which we take of the case, however, it will not be necessary to determine whether or not the deeds were obtained by fraud or undue influence, because, even if they were, it was not such fraud or undue influence as would vitiate the mortgage transactions, in the absence of proof that the mortgagees had notice of it, and we think there is an absence of such proof in this case. On the record before us the appellant executed and delivered the deeds, and there is no such showing of fraud or undue influence on the part of Weissenborn in securing the deeds as would justify the Court in setting aside these mortgages in the hands of *bona fide* holders for value. In 19 *R. C. L.* 297, it is stated that "fraud, undue influence, or duress perpetrated by a third person without the instigation, procurement, knowledge or consent of the mortgagee will generally not affect the mortgage or prejudice his security." And see also *Bryan's Appeal,* 101 Pa. St. 389; *Green v. Scranage,* 19 Iowa, 461, 87 Am. Dec. 447; *Moore v. Fuller,* 6 Ore. 272, 25 Am. Rep. 524; *Lefebvre v. Dutruit,* 51 Wis. 326, 37 Am. Rep. 833. We think this rule is peculiarly applicable to the facts now before us. We are not dealing here with the assignee of a mortgage fraudulently obtained, as was the case in *Cumb. Coal and Iron Co. v. Parish,* 42 Md. 598, nor with the conflicting rights of two assignees, as was the case in *Hunter v. Chase,* 144 Md. 13, but we are dealing with mortgages on property which it is alleged was fraudulently secured by the mortgagor, and then mortgaged by him. There may be cases of this sort in which the mortgagee would not be protected, but under the facts in the present case, we are clearly of the opinion that if the three appellees who hold these mortgages are *bona fide* holders for value, their claims must be sustained.

The appellant contends that the occupancy of the properties by her tenants at the time the mortgage loans were

made, was sufficient to put the appellees on notice that she had rights in the properties in conflict with those claimed by the mortgagor, and she further insists that the failure of the appellee Blum, and the attorney for the appellee, Florence B. Beach, trustee, to see that the money loaned on the properties, as part of their purchase price, was paid to the appellant, renders it inequitable for them to now recover it from her. But to these contentions we cannot assent.

Possession of property by tenants of the vendor is certainly not notice that the vendor is being taken advantage of, or that the vendor has rights in the property in conflict with the rights of the vendee. It is, on the contrary, a quite natural situation, and exists in probably the majority of cases where property is sold. It is only when property is in the possession of some one other than the vendor, or those claiming under him, that a prospective purchaser is generally put on notice as to the rights of the person thus in possession. *DuVal v. Wilmer,* 88 Md. 66, 77; *McNamara v. Feihe,* 139 Md. 516, 521; *Frank on Title,* page 137; *Venable on Real Property,* page 146; *Tiffany on Real Property,* Vol. 2, sec. 571, page 2220. In the present case two of the appellees, Blum and Beach, advanced money at the very time the properties in question were being conveyed by the appellant, so that the occupancy of the properties by her tenants was entirely natural, and could not be held to in any way give them notice of any conflicting rights of the appellant, or to arouse their suspicions as to the *bona fides* of the transfers. And of course the fact that these tenants were never subsequently disturbed in their possession, and continued to pay rent to the appellant up to the time the bill of complaint in this case was filed, cannot affect the situation which existed when the mortgages were executed. The loan made by the Economy Building and Loan Association was applied for around the latter part of May, or first of June, and the mortgage securing it was executed on June 10th, 1924. The deeds conveying the properties covered by this mortgage were, as we have seen, dated respectively May 3rd and May 14th, 1924, and the proper-

ties conveyed by the first deed were subject to the $4,000
Beach mortgage, while those conveyed by the second deed
were subject to the $5,000 Blum mortgage. Kidd, the record
owner of the properties, was necessarily present at the time
the mortgage was executed, and stated that he owned the
properties. There was no question of a transfer of title to
the properties, it was simply a question of lending money
on properties which Kidd had apparently owned for about a
month, and on which he had already secured substantial
mortgage loans from other parties.

The finding of tenants in the properties was just as natural
in this instance as it was at the time the earlier loans were
made, and we do not think, under the circumstances just
stated, that the failure of the association to ascertain to whom
the tenants were paying rent, was sufficient to charge it with
notice that the appellant had any claim to the property. "The
mere possession of real estate by one is not inconsistent with
title in another; nor is such possession calculated to deceive
others, because in regards to the title parties look to the
public records and not to the mere possession of the property
itself." *Fuller v. Brewster,* 53 Md. 363. There was nothing
unusual about this transaction, and nothing occurred during
its consummation to arouse any suspicion that everything was
not all right. It is certainly not the practice for prospective
mortgagees to ask tenants, to whom they are paying rent,
and, while there might be cases in which the failure to make
inquiries of the tenants would charge such mortgagees with
notice of what such inquiry would disclose, we do not think
this is one of them.

Nor do we think that the failure of the appellee Blum, and
of the attorney for the appellee Beach, to see to the applica-
tion of the proceeds of their mortgages, prevents them from
now collecting these loans. It is true that the money ad-
vanced on these mortgages was ostensibly part of the pur-
chase price of the properties, but counsel for the appellant
has cited no case, and we have been unable to find any case,
in which a purchase money mortgagee has, under such cir-

cumstances as exist in this case, been charged with the duty of seeing that the grantor of his mortgagor actually received the mortgage money. Such matters are often carried on by agents and attorneys, and where the original owner places another in possession of a properly executed deed for property, and thus enables that person to show a good record title in the grantee of the deed, he cannot later complain that he had not received the money paid by a *bona fide* mortgagee to the person who produced and delivered the deed. And, of course, the failure of the original grantor to receive the full consideration for a deed will not, of itself, invalidate the deed in the hands of one who, in good faith and for value, purchased the property from the grantee. *Combs v. Scharf,* 143 Md. 70; *Koogle v. Cline,* 110 Md. 587; *Poole v. Poole,* 129 Md. 387; *Thompson v. Carroll,* 57 Md. 197.

In this case the deed on which the Beach mortgage is based was read over to the appellant at the hospital by Mr. Parr, the notary public, and it was then signed and acknowledged by her and given to Parr with the statement that she knew what it was and that there was nothing she would not do for Mr. Weissenborn. Against this the only defense of the appellant is that she does not remember the transaction. The deed on which the Blum mortgage is based was signed and acknowledged at her home in the presence of Mr. and Mrs. Weissenborn, and here again the appellant's only explanation, under our findings, is that she does not remember signing the deed. In both instances, she placed properly executed deeds for certain of her properties in the possession of persons who later borrowed on these properties substantial sums of money from apparently innocent third parties. The questions we are concerned with are the rights of these third parties, not the rights of the appellant against the person who induced her to execute these deeds, and as between the appellant and these third parties, the familiar principle that "when one of two persons must suffer loss by action of a third person, the loss should fall on him who has enabled the third person to occasion such loss" must apply. In this

case, the action of the appellant in executing and delivering the deeds enabled Weissenborn to mortgage the properties to the appellees, and, as we think these last named are *bona fide* holders for value, their claims must prevail as against those of the appellant.

We are not unmindful of the unfortunate situation of the appellant. Advanced in years and feeble in health, she now finds herself practically stripped of her property, but, under the testimony in this case, that property has been taken from her in such a way that her rights and equities are inferior to those of the appellees, who, without notice of any fraud or other unfair dealing, advanced money to those whom the appellant had clothed with the *indicia* of title. Under such circumstances, whatever redress the appellant has, is not against the appellees, but is against the man whose persuasiveness or deceit induced her to entrust him with properly executed deeds for her property.

Finding no error the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*