ALBEMARLE BUILDING & LOAN ASSOCIATION ET AL. *v.* HERMAN J. TREUCHEL.

[No. 43, January Term, 1933.]

*Decided May 24th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Malcolm J. Coan,* with whom was *Augustine Palmisano, Jr.,* on the brief, for the appellants.

*Elbridge B. Donaldson,* with whom was *Louis J. Jira* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

On September 4th, 1923, Herman J. Treuchel, the appellee, purchased from the Lohmuller Building Company the leasehold property known as 204 Cedar Street, Westport (now known as 2204 Cedley Street) for $3,200, subject to a ground rent of sixty dollars. At the time of the purchase, Treuchel paid twenty-five dollars in cash, and was to pay $475 more on or before September 30th, 1923. The balance was to be paid in weekly installments of eight dollars. He made payments on September 7th, 1923, and on January 7th, 1924; and on January 14th, 1924, he paid the balance of the $500 which was to be paid on or before September 30th, 1923. On December 24th, 1923, the key of the house was delivered to Treuchel, and he immediately took control and possession of the property. He placed a sign on the front of the house reading: "For Rent. Apply 202 Cedar Street," and turned the key over to Charles P. Fuchs, who lived at the last-named address, 202 Cedar Street.

Three days thereafter, on December 27th, John W. Lohmuller, the president and, with his brother, owner of the Lohmuller Building Company, applied to the Albemarle Building & Loan Association, the appellants, for a loan of $2,000 on the property 204 Cedar Street. On January 18th, 1924, twenty-five days after possession of the property had been given to Treuchel under the sale to him, John W. Lohmuller and the Hamilton Park Company of Baltimore City, a holding company for Lohmuller Building Company, and of which company Lohmuller was also president and, with his brother, owner, executed to the Albemarle Building & Loan Association the mortgage applied for. This mortgage was duly recorded among the land records of Baltimore City on January 24th, 1924.

After the purchase of the property, Treuchel continued to make his payments of eight dollars per week until in 1927, at which time he had practically paid the Lohmuller Building Company the entire purchase money of $3,200 for the property. An examination of the title made by Treuchel at that time disclosed that on January 2nd, 1924, the Singer Construction Company had executed a ninety-nine year lease unto James R. Cadden for the property in question. The record title remained in Cadden until July 11th, 1924, when he conveyed it to the Hamilton Park Company, about five months after the execution and recording of the mortgage by that company to the Albemarle Building & Loan Association.

On July 23rd, 1927, the Hamilton Park Company conveyed the leasehold interest to Treuchel, which deed of assignment was duly recorded in the land records of Baltimore City on the 25th day of July, 1927. On September 5th, 1931, the Hamilton Park Company, it seems, defaulted in their payments under the terms of the mortgage to the Albemarle Building & Loan Association; and on that date the court by its decree ordered a sale of the mortgaged property and appointed Vincent L. Palmisano trustee to make the sale. In pursuance of the decree, the trustee advertised the property for sale. Whereupon the appellee, Treuchel, filed his bill in

the Circuit Court of Baltimore City against the Albemarle Building & Loan Association, the Hamilton Park Company of Baltimore City, and Vincent L. Palmisano, trustee, alleging therein the facts hereinbefore stated, and asked that the trustee be restrained from proceeding with the further advertisement and sale of the property, and that it be declared by the court "that said mortgage is not a lien on the said property."

A preliminary injunction was granted as prayed. The defendants answered the bill, and evidence was thereafter taken, upon which the court passed its decree permanently restraining the trustee from proceeding further with the sale of the property, and declaring the mortgage to be utterly null and void to all intents and purposes, in so far as the same interfered with or in any manner affected the right, title, or interest of the complainant in and to the property. From that order the defendants have appealed to this court.

It is not shown from the evidence in this case that any written contract of sale was entered into by and between the vendor and Treuchel for the sale of the property. The appellee, at the time of the purchase in September, 1923, paid in cash twenty-five dollars, and later made other payments upon the amount he was to pay on or before September 30th, 1923. When each of the payments was made, Treuchel received a receipt therefor from the vendor. These receipts were the only memoranda in writing held by the appellee in connection with the purchase of the property, other than the written entries in a book of the weekly payments made by him in accordance with the oral agreement of purchase. The appellee's claim to the property free and clear of the recorded mortgage, executed by the vendor to the appellant subsequently to the purchase by Treuchel, is founded upon the latter's possession of the property taken by virtue of the sale to him by the Lohmuller Building Company, which was practically the same as the Hamilton Park Company, to which the property was conveyed by the Lohmuller Building Company and John W. Lohmuller individually.

The law applicable to the situation here made by the contention of the parties is well stated in 27 *R. C. L.* 719, where it is said: "The undisturbed possession of land is generally considered as constructive notice of the rights of the possessor, because the fact of possession being notorious, it is sufficient to put the purchaser on his guard, and to induce him to inquire into the title of the possessor. This principle prevails where the possession is sought to be used for the purpose of charging a purchaser with notice of an outstanding equity or other interest in land, as well as where it is sought to charge a subsequent purchaser or incumbrancer with notice" of such outstanding equity, "and thereby defeat his right to protection under the recording acts. It is not to be supposed that any man who wishes to purchase land honestly will buy it without knowing what are the claims of a person who is in the open possession of it, and it is reasonable, if men will buy in such cases without inquiry, that they should be presumed to have known everything which they might have learned upon the inquiry. According to the general view actual knowledge of the third person's possession on the part of those sought to be charged with notice on account of such possession is not necessary. Notice in such cases is a legal deduction from the fact of possession." And, as further stated therein: "In order that possession may constitute notice of the right of the party in possession it must be a clear, unequivocal and unambiguous possession."

The possession should be inconsistent with the title of the apparent owner of record; and one of a character which would put a prudent person upon inquiry. The acts of ownership relied upon as showing possession should be acts that would naturally be observed by others and of a character so certain and definite in denoting ownership as not to be liable to be misunderstood or misconstrued; they should indicate that some one other than he who appears by the record to be the owner has rights in the property. 1 *Warvelle on Vendors* (2nd Ed.), sec. 271, p. 330; 39 *Cyc. Vendor and Purchaser,* pp. 1748, 1749; 2 *Pomeroy, Equity Jurisprudence,* (4th Ed.), sec. 620, p. 1184; *Hodge's Excrs. v. Amerman,* 40 N.

J. Eq. 99, 104, 2 A. 257; *Thompson on Real Property*, vol. 5, sec. 4246, and other sections which follow. The sufficiency of the possession to put a prudent person on inquiry depends upon the facts and circumstances of each particular case. "What acts may or may not constitute a possession are necessarily varied, and depend to some extent upon the nature, locality, and use to which the property may be applied, the situation of the parties, and a variety of circumstances which have necessarily to be taken into consideration in determining the question." 39 *Cyc.* 1749.

The property in this case consisted of a new dwelling house and premises which, at the time possession was given to the vendee, Treuchel, had never been occupied by any one. After acquiring the key to the house on December 24th, 1923, Treuchel placed on the house a sign: "For Rent. Apply 202 Cedar Street," which was the adjoining house, occupied by Charles Fuchs. The house was still vacant on January 18th, 1924, the day on which the mortgage to the Albemarle Building & Loan Association was executed, and it remained vacant thereafter until some time in the following February. The appellant disclaimed any knowledge of the sale of the property to Treuchel. So far as the record discloses, the placing of the sign mentioned on the front of the house was the only act of the vendee in relation to his exercise of any right or claim to the property up to the time of the execution of the mortgage. It is from that act that we are to determine whether the possession of Treuchel was sufficient to put the mortgagee upon notice.

The sign referred to contained only the words "For Rent. Apply to 202 Cedar Street." There was nothing in this notice from which it could be inferred that Treuchel was in possession of the premises. His name did not appear on it, and there was nothing to indicate that it was placed there at his instance, and no inference could be drawn therefrom that any person other than the owner of the record title had any interest in the property, or that it was inconsistent with any interest or claim thereto of the holder of such record title.

642

Notwithstanding the vendor's wrongful treatment of Treuchel, we feel constrained to reverse the action of the trial court, in granting the injunction restraining the sale of the property under the mortgage foreclosure proceedings, and in holding that the title of the vendee was not affected by the execution of the mortgage. Decree appealed from will be reversed.

*Decree reversed, with costs to appellant.*