CROSSLEY, ASSIGNEE, ET AL. *v.*
HARTMAN, ET AL.

[No. 713, September Term, 1966.]

*Decided December 6, 1967.*

The cause was argued before HAMMOND, C. J. and HOR-NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Vincent R. Groh* for appellants.

*Elwood E. Hauver,* with whom were *Wagaman, Wagaman, Meyers & Hauver* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This case comes before us on an agreed statement of facts, as permitted by Maryland Rule 828 g.[1] If the appellants' brief contains a statement of facts which the appellees accept as accurate and sufficient, no evidence in appellants' appendix and no record references are necessary. *Naughton v. Paul Jones & Co.,* 190 Md. 599, 59 A. 2d 496 (1948).

For purposes of this opinion, we have adopted the agreed statements of facts:

\* \* \*

That prior to May 1964, Emma S. Hartman, as surviving joint tenant, was the fee simple owner of a tract of land con-

---

1. "The parties may agree on a statement of undisputed facts, which agreed statement may be included in the printed extract or, if the parties so agree, may be included as all or a part of the statement of facts in the appellant's brief \* \* \*."

taining about 0.41 acres on the South side of State Route 64 in Washington County, Maryland, which was the remaining portion of a larger parcel of land conveyed to said Emma S. Hartman and her mother Anna M. Wolfinger as joint tenants on May 24, 1935. Mrs. Hartman is a widow 80 years of age living on a pension of $720.00 a year, who "is suffering a bit from loss of memory."

The facts show that in May of 1964, James L. Wolfinger, her nephew, called upon Attorney Elwood Hauver to prepare a deed to said property reserving a life interest to Emma S. Hartman, and granting a life estate to the said James L. Wolfinger and granting the remainder upon the death of the survivor unto Colonial Estates, Inc. A deed was so prepared and delivered to her home. That on July 28, 1964, Emma S. Hartman executed a different deed in fee simple to Colonial Estates, Inc., for said property, which was recorded among the Land Records of Washington County, Maryland, in Liber 411, folio 552. This deed contained an identical description of the property conveyed as was in the deed prepared by Attorney Hauver, except that the life estates did not appear therein.

Subsequent to recording said deed, Herman Stouffer, President and major stockholder of the grantee, Colonial Estates, Inc., applied to Home Federal Savings and Loan Association for a mortgage loan on the same, and on October 8, 1964, Colonial Estates, Inc., executed a mortgage to Home Federal Savings and Loan Association in the amount of $15,900.00 covering said 0.41 acres and improvements and also an adjoining tract of land of 0.53 acres which had previously been conveyed by Emma S. Hartman to said Herman Stouffer and on which he had built a stable or barn.

At the time this mortgage was executed no reservation of life interest appeared in the land records, nor did the mortgagee have any knowledge of any outstanding life estates in the property mortgaged, nor any other legal or equitable interest claimed by anyone other than Colonial Estates, Inc.

The testimony shows that Franklin Miller, an officer of Home Federal Savings and Loan Association, inspected the property on November 5, 1964, that people were in the house at that time, but he did not inquire as to who they were or what rights

they claimed therein. Other evidence produced indicated that Emma Hartman and her nephew were the people occupying the property at that time.

That only after the mortgage was in default and foreclosure proceedings were begun, and this cause filed by Emma S. Hartman, did Home Federal Savings and Loan Association learn of such claim of life interests.

Emma S. Hartman testified that the signature on the deed to Colonial Estates, Inc., was her signature, but she did not know how it got on the deed and denied asking Attorney Hauver to prepare a deed for her or that she sold the property in question, but did believe she had gone to the office of Attorney Hauver and consulted him to see "if everything was all right." She did remember selling 0.53 acres to the rear of the property in question to Herman Stouffer (President of Colonial Estates, Inc.) who built a barn thereon for horses. The conveyance of said property being by deed from her dated December 30, 1960, and recorded in Liber 364, folio 44.

Mrs. Hartman denied that any mortgage was against the property at the time the deed to Colonial Estates, Inc., was recorded and denied ever discussing the sale of the property or receiving any consideration therefor or signing any papers. Her nephew, James Lloyd Wolfinger, a handicapped man, age 58, who lived with Mrs. Hartman for over 30 years, testified that he had asked Attorney Hauver to prepare the deed giving himself and Mrs. Hartman life estates. He testified that Mr. Stouffer bought the property for $10,000.00 "plus both of us's life interest," which he was either to put in the deed or give to them otherwise. That said price was paid by Stouffer paying off an existing $3,000.00 mortgage, paying taxes and other debts, painting the house and paying $800.00 cash and building a garage and shop for James Wolfinger to use for $2,200.00, the balance to be paid over a 3-year period. He testified that he knew his Aunt Emma S. Hartman had sold the property but he had no knowledge of Emma S. Hartman actually signing the deed to Colonial Estates, Inc., and never saw the deed that was recorded. He testified that he approached Mr. Herman Stouffer "at least forty times * * * for that contract for that life interest.

I either got evaded or 'he'd bring it up tomorrow', it was the same evasion all the time."

That he and Emma Hartman continued to live in the house after July 1964 and paid no rent and Stouffer never tried to evict them or ask them for rent, although he lived in the area and was frequently seen. That he, Mr. Wolfinger, was not present when Mr. Miller from Home Federal Savings and Loan Association made the inspection and knew of no mortgage being placed thereon by Home Federal Savings and Loan Association until the property was advertised for foreclosure.

A Mr. Avey testified that Stouffer permitted him to place his trailer on said property to the rear of the house occupied by Emma S. Hartman about 2 years ago and that Emma Hartman consented thereto on request of Mr. Stouffer. That Stouffer told him Mrs. Hartman and Mr. Wolfinger had life interests in the property.

Witness Frank Wilson, employed by Mr. Stouffer and a resident of the area, testified that Mr. Stouffer told him of the life interest of Mrs. Hartman and Mr. Wolfinger and that such life interests were fairly common knowledge among the people in the area of Holiday Acres development adjoining this property.

Witness Roger William Wolfinger, brother to Mrs. Hartman, indicated that she had asked his opinion about her conveying the property to Mr. Stouffer and that he would pay off the mortgage and current debts and that she and James Wolfinger would have a life interest in the place. He testified he never saw a contract in that regard, but that Mr. Stouffer did tear down the old garage to get access to the barn in back of his sister's property.

The notary who subscribed to the affidavit attached to the deed executed by Emma S. Hartman to Colonial Estates, Inc., on July 28, 1964, testified that he did not see Mrs. Hartman sign the deed, that he was in the habit of notarizing instruments brought to him by Herman Stouffer, as a matter of course, after calling the parties to the instruments, and that he therefore must have asked Mrs. Hartman if she signed the deed.

The Circuit Court found that the mortgagee, Home Federal Savings and Loan Association, had constructive notice of the

rights of Emma Hartman and James Wolfinger, arising out of the fact that they remained in the property and ordered that the said property be sold at the foreclosure sale subject to said life interest.

The property was so sold with the understanding that the right to appeal from the decree would be assigned to the purchaser.

Elwood W. Grimm and Mary C. Grimm his wife, purchased the 0.41 acre parcel at public sale on September 6, 1966, for $6,000.00 from Evan Crossley Assignee for Foreclosure and Collection of mortgage to Home Federal Savings and Loan Association of Hagerstown, the same being sold, pursuant to the decree of the Circuit Court for Washington County, in the case of Emma S. Hartman, et al. vs. Home Federal Savings and Loan Association, No. 24,876 Equity, subject to the life estates of Emma S. Hartman and James L. Wolfinger and with the right of appeal from the decree in No. 24,876 Equity being specifically included in the sale and assigned to the purchasers Elwood W. Grimm and Mary C. Grimm. Said purchasers elected to pursue said appeal in the place and stead of said Home Federal Savings and Loan Association of Hagerstown, mortgagee.

\* \* \*

The appellee does not agree that the property was first visited by a representative of Home Federal on November 5, 1964, but under our view of the case, the date of this visit is not controlling.

The case presents two questions. Prior to argument of the case on its merits counsel for the appellees presented a motion to dismiss the appeal under Maryland Rule 835 b (1)[2] and assigned as reasons in support of the motion: (1) that appellants acquiesced in the decree ordering the property to be sold subject to the life estates, by not objecting to the ratification of the sale; (2) that the appellants were not injured by the decree below; and (3) that real parties in interest in the appeal

---

2. "On motion filed by any party, an appeal may be dismissed for any one of the following reasons:

(1) The appeal is not allowed by law \* \* \*."

202

are Elwood Grimm and wife, purchasers at the foreclosure sale, who are prosecuting the appeal in the names of Crossley, the assignee, and Home Federal, the mortgagee.

We reserved our ruling on the motion to dismiss, and that motion is now denied. The appellants contend, and we think correctly, that their right to appeal is accorded by Code (1957) Art. 5 § 6: "Any party may appeal to the Court of Appeals from any final decree, or order in the nature of a final decree, entered by a court of equity." The decree appealed from was clearly the decree entered on September 2, 1966 in Equity case No. 24,876 which fixed the quantum of the interest to be sold in the foreclosure proceeding, i.e., the sale of the remainder subject to the Hartman-Wolfinger life estates. The foreclosure proceeding (Equity case No. 24,864) was conducted in accordance with the September 2, 1966 decree; the sale was not ratified until after the entry of the order of appeal; and the rights of the appellants, clearly reserved at the foreclosure sale, were in no way prejudiced by their failure to except to the ratification of the sale. Crossley and Home Federal were parties in case No. 24,876 below, and assigned their rights to Grimm, who properly determined to prosecute the appeal in their names.

A second and more important question is presented by the appeal: Was continued possession of real property by the grantor and her nephew constructive notice of the life estates claimed by them as against a subsequent mortgagee who relied on a recorded fee simple deed signed by the grantor? This question must be answered in the negative, notwithstanding the fact that Mrs. Hartman was the innocent victim of Stouffer's fraud.

In a series of cases, this court has recognized the principle that undisturbed possession of land by a stranger to the record chain of title may, depending on the circumstances, put a purchaser on notice as to the rights of the person in possession. In *Ringgold v. Bryan,* 3 Md. Ch. 488 (1850) the complainant Mrs. Ringgold and her husband sold a tract of land to Hobbs, under a contract which provided that Hobbs was to expend, for Mrs. Ringgold's benefit during his life, a sum equivalent to the interest on the purchase price, and grant Mrs. Ringgold a life interest in the dwelling house and appurtenant buildings on the farm. The Ringgolds executed a deed conveying an absolute fee

simple title to Hobbs; Hobbs subsequently mortgaged the property to Bryan; and Bryan purchased at a sheriff's sale. Mrs. Ringgold then sought to charge the property in Bryan's hands with the undertaking contained in her contract with Hobbs. The Chancellor held that the possession of a portion of the property by Mrs. Ringgold was sufficient to put Bryan on notice of the existence of the Hobbs contract, and to charge him with responsibility for performance of the unrecorded agreement. But the case can be distinguished from the later Maryland cases, and from the case at bar, by the Chancellor's finding that Bryan had *actual* notice of the provisions of the contract between the Ringgolds and Hobbs before he made the mortgage loan or purchased at the sheriff's sale.

*Hoffman v. Gosnell*, 75 Md. 577, 24 A. 28 (1892) involved an absolute conveyance on July 10, 1877 of a valuable distillery property. The deed was duly recorded, and on the day when the deed was executed, the grantee of the distillery entered into an agreement with the grantors which recited that the grantee was taking title in order to make a sale of the distillery and to apply the proceeds of sale toward the satisfaction of certain obligations of the grantors. This agreement was never recorded, and apparently never performed. Thirteen years later, on October 11, 1890, the grantee of the distillery made a deed of trust for the benefit of creditors. The case came before the court as a result of an effort to subject the distillery property to the provisions of the unrecorded agreement, in derogation of the claims of the creditors of the grantee. The record showed that one of the grantors had been in possession of the distillery for the thirteen year period between the conveyance and the deed of trust for creditors. After a careful review of the purposes and history of the recordation statute, the court held that the claims of those who took under the recorded deed were superior to the rights of the claimants under the unrecorded agreement. In disposing of the contention with respect to continued possession by one of the grantors, this Court said, at 75 Md. 577, 593:

> "But the appellants have contended that inasmuch as David Hudson Flack was in the actual possession of the Canton distillery property from the time of the

conveyance to his brother James till the conveyance by James to Gosnell, when he voluntarily surrendered to Gosnell, that the creditors of James W. Flack had enough to put them on notice and inquiry about the true nature of James W. Flack's title. This court has said in *Fuller v. Brewster,* 53 Md. 363, that 'The mere possession of real estate by one is not inconsistent with title in another; nor is such possession calculated to deceive others, because in regard to the title parties look to the public records, and not to the mere possession of the property itself.' It may be true that David H. Flack did have a sign on the property and was using it for storage purposes. The property was no longer, however, occupied by both grantors, nor for the same purpose for which they had jointly occupied it. One grantor still was there, and the other having entirely withdrawn after the deed, certainly the contention of the appellants is not supported. David was occupying as tenant of James, and inquiry could have so disclosed, and he promptly surrendered to the assignee of James when asked. If they had gone further and asked the tax gatherer they would have found that James paid the taxes. We cannot see that the simple fact that *one* of the grantors still occupied a part of the property or even the whole of it, can detract from the force and effect of the recorded deed conveying absolute title for a large money consideration, and deprive the creditors of James W. Flack, the grantor, of the protection which the unqualified deed for the property of record, gave them in dealing with and trusting him."

*McNamara v. Feihe,* 139 Md. 516, 115 A. 753 (1921) involved the following facts: On October 20, 1913, the Rev. Bernard J. McNamara purchased a house with funds advanced by his father. Title was taken in the son's name, and the son entered into a written, but unrecorded, agreement that the property was to be used as a residence for the son's parents and would not be sold without the parents' consent. Rev. Bernard J. McNamara paid the taxes, ground rent, and mortgage in-

terest on the property and his family lived in it until he sold the house to Mr. Feihe. Prior to the sale Feihe spoke with Rev. McNamara's father, and during this conversation, the father did not suggest to Feihe that he claimed any right to remain in possession under the terms of the unrecorded agreement or on any other ground. When Feihe attempted to obtain possession, Rev. McNamara's father sought injunctive relief. Denial of the relief sought was affirmed on appeal on the theory that possession of the property by Rev. McNamara's father was not inconsistent with the holding of record title by the son.

*Wicklein v. Kidd,* 149 Md. 412, 131 A. 780 (1926) presented facts not dissimilar from those of the case at bar. Mrs. Wicklein was persuaded by one Weissenborn to convey certain properties to Kidd, a strawman for Weissenborn. Kidd then mortgaged the properties and turned the proceeds of the loans over to Weissenborn. When there was a default in the mortgage payments, foreclosure proceedings were instituted which Mrs. Wicklein attempted to enjoin, contending "that the occupancy of the properties by her tenants at the time the mortgage loans were made, was sufficient to put the appellees on notice that she had rights in the properties in conflict with those claimed by the mortgagor * * *." In disposing of this contention, the Court said 149 Md. at 422-24:

> "Possession of property by tenants of the vendor is certainly not notice that the vendor is being taken advantage of, or that the vendor has rights in the property in conflict with the rights of the vendee. It is, on the contrary, a quite natural situation, and exists in probably the majority of cases where property is sold. It is only when property is in the possession of some one other than the vendor, or those claiming under him, that a prospective purchaser is generally put on notice as to the rights of the person thus in possession."
>
> * * *
>
> "The finding of tenants in the properties was just as natural in this instance as it was at the time the earlier loans were made, and we do not think, under

the circumstances just stated, that the failure of the association to ascertain to whom the tenants were paying rent, was sufficient to charge it with notice that the appellant had any claim to the property. 'The mere possession of real estate by one is not inconsistent with title in another; nor is such possession calculated to deceive others, because in regards to the title parties look to the public records and not to the mere possession of the property itself.' *Fuller v. Brewster,* 53 Md. 363. There was nothing unusual about this transaction, and nothing occurred during its consummation to arouse any suspicion that everything was not all right. It is certainly not the practice for prospective mortgagees to ask tenants, to whom they are paying rent, and, while there might be cases in which the failure to make inquiries of the tenants would charge such mortgagees with notice of what such inquiry would disclose, we do not think this is one of them."

\* \* \*

"We are not unmindful of the unfortunate situation of the appellant. Advanced in years and feeble in health, she now finds herself practically stripped of her property, but, under the testimony in this case, that property has been taken from her in such a way that her rights and equities are inferior to those of the appellees, who, without notice of any fraud or other unfair dealing, advanced money to those whom the appellant had clothed with the *indicia* of title. Under such circumstances, whatever redress the appellant has, is not against the appellees, but is against the man whose persuasiveness or deceit induced her to entrust him with properly executed deeds for her property."

The case relied upon by the lower court in its opinion was *Albemarle Bldg. & Loan Ass'n. v. Treuchel,* 164 Md. 636, 166 A. 404 (1933). Treuchel purchased from Lohmuller Building Company a property, not at the time owned by Lohmuller, under an unrecorded installment contract. Treuchel took possession of the house on December 23, 1923, and put a "For Rent"

sign in the window. On January 18, 1924, Lohmuller and its holding company mortgaged the house to Albemarle. In 1927, when Treuchel had completed his payments, title was conveyed to him by the holding company, which, in 1931, defaulted on its payments to Albemarle. Foreclosure proceedings were instituted, which Treuchel attempted to enjoin. From a granting of the injunction, Albemarle appealed. Judge Pattison, speaking for the court, said 164 Md. at 640-41 :

"The law applicable to the situation here made by the contention of the parties is well stated in *27 R. C. L. 719,* where it is said: 'The undisturbed possession of land is generally considered as constructive notice of the rights of the possessor, because the fact of possession being notorious, it is sufficient to put the purchaser on his guard, and to induce him to inquire into the title of the possessor. This principle prevails where the possession is sought to be used for the purpose of charging a purchaser with notice of an outstanding equity or other interest in land, as well as where it is sought to charge a subsequent purchaser or incumbrancer with notice' of such outstanding equity, 'and thereby defeat his right to protection under the recording acts. It is not to be supposed that any man who wishes to purchase land honestly will buy it without knowing what are the claims of a person who is in the open possession of it, and it is reasonable, if men will buy in such cases without inquiry, that they should be presumed to have known everything which they might have learned upon the inquiry. According to the general view actual knowledge of the third person's possession on the part of those sought to be charged with notice on account of such possession is not necessary. Notice in such cases is a legal deduction from the fact of possession.' And, as further stated therein: 'In order that possession may constitute notice of the right of the party in possession it must be a clear, unequivocal and unambiguous possession.'

"The possession should be inconsistent with the title of the apparent owner of record; and one of a character which would put a prudent person upon inquiry. The acts of ownership relied upon as showing possession should be acts that would naturally be observed by others and of a character so certain and definite in denoting ownership as not to be liable to be misunderstood or misconstrued; they should indicate that some one other than he who appears by the record to be the owner has rights in the property * * *. The sufficiency of the possession to put a prudent person on inquiry depends upon the facts and circumstances of each particular case. 'What acts may or may not constitute a possession are necessarily varied, and depend to some extent upon the nature, locality, and use to which the property may be applied, the situation of the parties, and a variety of circumstances which have necessarily to be taken into consideration in determining the question.' * * *.

"The property in this case consisted of a new dwelling house and premises which, at the time possession was given to the vendee, Treuchel, had never been occupied by any one. After acquiring the key to the house on December 24th, 1923, Treuchel placed on the house a sign: 'For Rent. Apply 202 Cedar Street,' which was the adjoining house, occupied by Charles Fuchs. The house was still vacant on January 18, 1924, the day on which the mortgage to the Albemarle Building & Loan Association was executed, and it remained vacant thereafter until some time in the following February. The appellant disclaimed any knowledge of the sale of the property to Treuchel. So far as the record discloses, the placing of the sign mentioned on the front of the house was the only act of the vendee in relation to his exercise of any right or claim to the property up to the time of the execution of the mortgage. It is from that act that we are to determine whether the possession of Treuchel was sufficient to put the mortgagee upon notice.

"'The sign referred to contained only the words 'For Rent. Apply to 202 Cedar Street.' There was nothing in this notice from which it could be inferred that Treuchel was in possession of the premises. His name did not appear on it, and there was nothing to indicate that it was placed there at his instance, and no inference could be drawn therefrom that any person other than the owner of the record title had any interest in the property, or that it was inconsistent with any interest or claim thereto of the holder of such record title."

In the instant case, we think that the Chancellor below was in error in holding that the unexplained possession of a portion of the mortgaged premises by Mrs. Hartman and her nephew constituted constructive notice to a prospective mortgagee of the existence of an interest adverse to the record title. This is not the rule to be derived from the Maryland cases summarized above, nor is it in accord with the view taken by a majority of jurisdictions. See Annot., 105 A.L.R. 845, 849, and cases there cited; Casner, *American Law of Property* § 17.14 (1952); *Schell v. Kneedler,* 359 Pa. 424, 59 A. 2d 91, 2 A.L.R. 2d 854 (1948) (Occupancy by record owner and another is not notice of latter's interest).

As we said in *Colonial Building & Loan Ass'n, Inc. v. Boden,* 169 Md. 493, 499, 182 A. 665 (1936):

"In regard to the second contention, it is undoubtedly true that the open, notorious, and exclusive possession of property is usually sufficient to charge an intending purchaser with such notice of the possessor's rights as he could ascertain by reasonable inquiry * * *. But this rule is subject to the qualification that such possession must not be consistent with the record title. The constructive notice which arises by possession must always be of such a nature that it may not be rendered ambiguous from any other cause * * *. To hold otherwise would in many instances practically destroy the effect of our registration laws, which were created to protect the public, for, as was

said by this court in *Hoffman v. Gosnell,* 75 Md. 577, 590, 24 A. 28, 31: 'The registry acts of this state were designed to avoid abuses and deceits by mortgages and pretended titles, and for the protection of creditors, and should be construed so as to effect that end.' "

Although we recognize that circumstances might be presented which would put a prospective purchaser or mortgagee under a duty to inquire (cf. Rhynhart, *Notes on the Law of Landlord and Tenant,* 20 Md. L. Rev. 1, 18) continued possession by a prior owner is not so inconsistent with the record title as to amount to constructive notice, even although the original conveyance was procured by fraud. *Wicklein v. Kidd, supra.*

> *Decree reversed, costs to be paid by appellees.*